[No. C039786. Third Dist., Sept. 24, 2002.]

TERESA J. et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
D.J. et al., Real Parties in Interest.

COUNSEL

Eisen & Johnston, Jay-Allen Eisen, Marian M. Johnston; and Thomas Volk for Petitioners.

No appearance for Respondent.

Bill Lockyer, Attorney General, Charlton G. Holland III, Assistant Attorney General, Frank S. Furtek and Theodore Garelis, Deputy Attorneys General, for Real Party in Interest State Department of Social Services.

Robert A. Ryan, Jr., County Counsel, and Diana Ruiz, Deputy County Counsel, for Real Party in Interest Sacramento Department of Health and Human Services.

Elliot K. Sevier for Real Parties in Interest V.F. and B.F.

Michael B. Hansell for Real Party in Interest D.J.

OPINION

MORRISON, J.—D.J., the minor, was adjudged a dependent child under Welfare and Institutions Code section 300 (all further statutory references are to this code unless otherwise specified). Thereafter, his mother, Teresa J. (Teresa), relinquished him for adoption to a private adoption agency (ICA), for adoption by D.C. and K.C. (D. and K.). At issue in this case is the validity of that relinquishment. Specifically, the question posed is whether the birth mother of a child who has been adjudged a dependent of the juvenile court may relinquish the child to a private adoption agency.

The respondent juvenile court held that a dependent child may be relinquished only to a public adoption agency and found the relinquishment of the minor by his birth mother, Teresa, to ICA was invalid. Petitioners, Teresa and the prospective adoptive parents, D. and K., petition for writs of mandate, prohibition and habeas corpus to overturn that court order, to vacate proceedings to terminate Teresa's parental rights, to direct real party in interest State Department of Social Services (DSS) to acknowledge relinquishments of dependent children to private adoption agencies, and to deliver the minor to ICA to be placed for adoption with D. and K.

Construing the applicable statutes, section 361 and Family Code section 8700, we conclude that a birth parent may relinquish a dependent child to a private adoption agency, subject to the juvenile court's power to limit the parent's control over the child. Since the juvenile court believed Teresa could not relinquish the minor to ICA, the court's order finding the relinquishment invalid must be reversed. We shall remand the matter to the juvenile court to exercise its discretion under section 361, subdivision (a), to determine whether Teresa's control over the minor should be limited to preclude a relinquishment to ICA.

### FACTUAL AND PROCEDURAL BACKGROUND

When the minor was born, Teresa was serving a four-year sentence for burglary with prior convictions. The minor was placed in confidential foster care with D. and K. when he was two days old.

On that same day, the Sacramento Department of Health and Human Services (DHHS) filed a petition alleging the minor came within the provisions of section 300 because Teresa had a substance abuse problem from which she had failed or refused to rehabilitate and which rendered her incapable of providing adequate care and supervision for the minor.

The juvenile court held a contested jurisdictional and dispositional hearing two months later on July 11, 2001. The court found the allegations of the section 300 petition true, adjudged the minor a dependent child, denied reunification services, and committed the minor to the care, custody and control of DHHS. Before the hearing, the minor's foster parents, D. and K., told the social worker they wanted to adopt the minor. At the hearing, the social worker advised the court that D. and K. were willing to adopt, but they did not have an approved home study.

Two days after the hearing, on a four-hour notice, DHHS removed the minor from D. and K.'s home and placed him with V.F. and B.F. (V. and B.) Almost immediately, D. and K. moved for an order determining they were de facto parents, which was granted. They also petitioned to modify the juvenile court's order at the jurisdictional and dispositional hearing. They claimed DHHS misinformed the court that they were not appropriate adopting parents, which led the court to approve a permanent plan of adoption with another adoptive family. They further claimed there was new evidence showing that the minor had bonded with them.

In September, V. and B., the couple with whom DHHS had placed the minor, sought and obtained de facto parent status. The juvenile court set a review hearing under section 366.26.

On September 23, 2001, Teresa executed a statement of understanding and a relinquishment, relinquishing the minor to ICA for adoption. The statement of understanding named D. and K. as adoptive parents. Two days later, DSS signed an acknowledgement and receipt of the relinquishment. D. and K. then moved to vacate the trial, for an order to transfer the minor to ICA, and to continue the matter for a six-month review.

About two weeks later, the chief of the adoptions policy bureau of DSS wrote ICA that the acknowledgement of the relinquishment was void because it did not comply with section 361, subdivision (b). According to DSS, under that subdivision, a parent may relinquish a dependent child only to DSS or a licensed county adoption agency. A relinquishment to a private adoption agency, such as ICA, is not permitted. This letter was based on the advice of DSS counsel and the concurrence of the Attorney General's Office.

On October 30, 2001, the juvenile court agreed with DSS's interpretation of section 361, subdivision (b), and ruled the relinquishment was invalid. The parties stipulated that D. and K.'s home was suitable for the minor. The parties agreed to continue the modification hearing and to join it with a section 366.26 hearing.

Teresa, D. and K. petitioned this court for a writ of mandate commanding the juvenile court to set aside its order of October 30, 2001, and to enter an order vacating the trial date, directing DHHS to deliver the minor to the custody of D. and K., and continuing the proceedings for six months. They also petitioned for a writ of prohibition prohibiting the juvenile court from conducting any proceedings to terminate Teresa's parental rights and from ordering the minor placed for adoption with anyone other than D. and K. They sought a writ of mandate directing DSS to refrain from refusing to acknowledge relinquishment of a dependent child to a private adoption agency and to take all necessary steps to validate its acknowledgement of Teresa's relinquishment of the minor to ICA. They petitioned for a writ of habeas corpus to DHHS and V. and B. commanding them to deliver the minor to ICA to be placed for adoption with D. and K. Finally, they sought a stay of all dependency proceedings.

This court granted the stay and issued an alternative writ to the juvenile court to grant the relief requested or show cause why such relief should not be granted.

## DISCUSSION

Petitioners contend Teresa had the right to relinquish the minor to ICA under Family Code section 8700, which provides in part: "Either birth

parent may relinquish a child to the department or a licensed adoption agency for adoption by a written statement signed before two subscribing witnesses and acknowledged before an authorized official of the department or agency." (Fam. Code, § 8700, subd. (a).) A " 'licensed adoption agency' " means both a licensed county adoption agency and a licensed private adoption agency. (Fam. Code, § 8530; see also Cal. Code Regs., tit. 22, § 35000, subd. (*l*)(1).) Since Family Code section 8700 makes no distinction between a public and private adoption agency, petitioners contend Teresa could relinquish her child to either.

A relinquishment has no effect until a certified copy is filed with DSS. (Fam. Code, § 8700, subd. (e).) A relinquishment is filed when DSS signs a receipt and acknowledgement of a certified copy of the relinquishment form. (Cal. Code Regs., tit. 22, § 35165, subd. (a)(A).) Petitioners note the paperwork for the relinquishment supports their position that a dependent child may be relinquished to a private adoption agency. The statement of understanding that Teresa completed is a DSS form and states it is for use by the mother or presumed father of a child who is detained, a juvenile court dependent in out-of-home care, or the ward of a legal guardian. Yet nothing on the document limits relinquishment to a public adoption agency. The form by which DSS acknowledges and confirms receipt of the relinquishment provides various reasons why an acknowledgement could not be issued; that the relinquishment is to a private adoption agency is not among the reasons listed.

The relinquishment is final upon filing with the DSS and may be rescinded only by the mutual consent of DSS or the adoption agency to which the child was relinquished and the birth parent relinquishing the child. (Fam. Code, § 8700, subd. (e).) There is an exception to this rule of finality if the relinquishment names the person or persons with whom the child is to be placed and the child is not placed with such persons. (Fam. Code, § 8700, subd. (g).) In such circumstances, the relinquishing parent has 30 days to rescind the relinquishment. (Fam. Code, § 8700, subd. (h).) Petitioners contend the relinquishment was properly completed and filed, so it is final and must be recognized by DSS, DHHS, and the juvenile court.

Real parties in interest DSS and DHHS contend section 361, subdivision (b) (hereafter 361(b)) is a more specific statute than Family Code section 8700 and controls in this case. They contend section 361(b) limits the parent's ability to relinquish a dependent child; the dependent child may be relinquished only to DSS or a licensed county adoption agency. Section 361(b) provides: "Nothing in subdivision (a) shall be construed to limit the ability of a parent to voluntarily relinquish his or her child to the State

Department of Social Services or to a licensed county adoption agency at any time while the child is a dependent child of the juvenile court if the department or agency is willing to accept the relinquishment." DSS and DHHS contend the statute is clear and unambiguous; since it mentions only DSS and a licensed county adoption agency, those are the only entities to which a dependent child may be relinquished.

■ "In construing a statute, a court's objective is to ascertain and effectuate legislative intent. [Citation.] To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent. [Citation.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) "We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." ' We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

■ To construe the language of section 361(b) in context, we consider it first in the context of section 361 as a whole, and second in the context of its enactment. Section 361(b) begins with a reference to subdivision (a) and so must be read together with that subdivision. "(a) In all cases in which a minor is adjudged a dependent child of the court on the ground that the minor is a person described by Section 300, the court may limit the control to be exercised over the dependent child by any parent or guardian and shall by its order clearly and specifically set forth all those limitations. Any limitation on the right of the parent or guardian to make educational decisions for the child shall be specifically addressed in the court order. The limitations shall not exceed those necessary to protect the child. [¶] (b) Nothing in subdivision (a) shall be construed to limit the ability of a parent to voluntarily relinquish his or her child to the State Department of Social Services or to a licensed county adoption agency at any time while the child is a dependent child of the juvenile court if the department or agency is willing to accept the relinquishment." (§ 361, subds. (a) & (b).)

The first two subdivisions of section 361 speak to the juvenile court's ability to limit the control of a parent of a dependent child. Generally, the court has power to limit the parent's control as necessary to protect the dependent child. Subdivision (b) limits the court's power. The court may not interfere with a parent's ability to relinquish a dependent child to DSS or a

licensed local adoption agency, if the agency is willing to accept the relinquishment. Section 361(b) says nothing about the parent's ability to relinquish a dependent child to a private adoption agency.

Section 361(b) was added as part of Assembly Bill No. 1544 (1997-1998 Reg. Sess.). (Stats. 1997, ch. 793, § 15.) "This bill would declare the intent of the Legislature to, among other things, remove the barriers to adoption by relatives of children currently in, or at risk of entering, the dependency system. The bill would authorize a relative of a minor to file a petition for adoption, would authorize the relative, the birth relatives of a minor, including the parents of the minor, and the minor to enter into a kinship adoption agreement, as specified, and would establish procedures for the enforcement, modification, and termination of the agreements." (Legis. Counsel's Dig., Assem. Bill No. 1544 (1997-1998 Reg. Sess.).)

In addition to providing for kinship adoption agreements (Fam. Code, §§ 8714.5, 8714.7), Assembly Bill No. 1544 made other changes to both the dependency provisions of the Welfare and Institutions Code and to the Family Code. One of these was the addition of section 361(b). There were other changes that recognized the ability of a parent of a dependent child to relinquish that child to a private adoption agency. In particular, Family Code section 8700 was amended by the addition of subdivision (i), which requires certain notices when a dependent child is relinquished. (Stats. 1997, ch. 793, § 3.) Subdivision (i) of Family Code section 8700 provides: "If the parent has relinquished a child, who has been found to come within Section 300 of the Welfare and Institutions Code or is the subject of a petition for jurisdiction of the juvenile court under Section 300 of the Welfare and Institutions Code, to the department or a licensed adoption agency for the purpose of adoption, the department or agency accepting the relinquishment shall provide written notice of the relinquishment within five court days to all of the following: [¶] (1) The juvenile court having jurisdiction of the child. [¶] (2) The child's attorney, if any. [¶] (3) The relinquishing parent's attorney, if any." The use of "licensed adoption agency" indicates the dependent child may be relinquished to both public and private adoption agencies. (Fam. Code, § 8530.)

Further, two additions to the Welfare and Institutions Code on dependent children also acknowledge that a parent can relinquish a dependent child to a private, as well as a public, adoption agency. In referring to a relinquishment, these statutes do not limit the agency receiving the relinquishment to a public adoption agency. Section 358.1, subdivision (e) requires a social study or evaluation made by a probation officer or child advocate include whether the parent was advised of the option to participate in adoption

planning and to voluntarily relinquish the child for adoption "if an adoption agency is willing to accept the relinquishment." (Stats. 1997, ch. 793, § 14.) Section 366.23 was amended to provide no notice of a section 366.26 hearing to a mother or presumed father who has relinquished the child to DSS or "to a licensed adoption agency for adoption," if the relinquishment has been accepted and filed with notice, as required by Family Code section 8700. (§ 366.23, subd. (e)(1) as amended by Stats. 1997, ch. 793, § 24.)

Read in context, section 361(b) does not limit the parent's ability to relinquish a dependent child for adoption, but rather limits the juvenile court's ability to interfere with that decision when the relinquishment is to a public adoption agency.

DSS and DHHS argue that relinquishment of a dependent child must be limited to public agencies because only those agencies are involved in concurrent planning for the child. Additionally, DHHS asserts Teresa is properly deprived of her right to select the minor's adoptive parents because of her incarceration and drug abuse. While it might be a valid policy decision that once reunification services have been denied, to deprive a parent of a dependent child of the right to be involved in the adoption of the child, that is not the policy decision the Legislature made. Instead, the Legislature determined that in some cases, the birth parent may not only be involved in the adoption of the dependent child, but may remain involved with the child even after adoption.[1] In enacting Assembly Bill No. 1544, "[t]he Legislature determined that in limited circumstances the goal of providing stable homes to children may be fostered by allowing relatives of the child who are the prospective adoptive parent or parents, the birth relatives (including the birth parent or parents), and the child to enter into agreements providing for visitation, future contact, and/or sharing of information. Such an agreement is known as a kinship adoption agreement." (*In re Kimberly S.* (1999) 71 Cal.App.4th 405, 409 [83 Cal.Rptr.2d 740].) Even where the prospective adoptive parents are not relatives of the child, the Legislature took no action to preclude a voluntary relinquishment of a dependent child to a private adoption agency.

We recognize the legitimate concerns raised by DSS and DHHS that introducing a third party, the private adoption agency, into a dependency situation may cause problems and create delay in establishing a permanent

---

[1]By subsequent amendment, these arrangements are now referred to as postadoption contract agreements and may be entered into by adoptive parents who are not relatives. (Stats. 2000, chs. 910 & 930.) The terms of such agreements are limited to the sharing of information about the child unless the child has an existing relationship with the birth relatives. (Fam. Code, § 8714.7, subd. (b)(2).)

home for the dependent child. We also acknowledge the vigorous and attractive argument of real parties in interest V. and B., echoed by the minor, that allowing the relinquishment to stand and moving the minor to a new home is not in his best interests as it impairs his stability and security and may impair his ability to form secure attachments. We disagree, however, that these concerns can be addressed only by construing section 361(b) to limit relinquishments of dependent children to public adoption agencies.

The juvenile court retains its jurisdiction over the minor and the ability to provide for his protection and safety. (§ 202, subd. (a).) A juvenile court retains jurisdiction over a dependent child who is subject to a permanent plan for adoption until the adoption is final. (§ 366.3.) "When a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment, subject to further order of the court." (§ 362, subd. (a).) The court may limit the control of the parent over the dependent child. (§ 361, subd. (a).) There is an exception to this power of the court where the parent relinquishes the dependent child to a public adoption agency (361(b)), but there is no exception where the relinquishment is to a private adoption agency. Thus, the juvenile court retains its broad power to limit the parent's control over the dependent child, which includes the parent's ability to relinquish the child to a private adoption agency. In exercising this power to limit the parent's control, the juvenile court may consider the concerns raised by the various real parties in interest and whether such concerns militate against allowing the relinquishment to a private adoption agency. In this decision, as in all others, the juvenile court must act in the best interests of the dependent child. (§ 202, subd. (e).)

Here, the juvenile court did not declare the relinquishment invalid as a result of the exercise of its power under section 361, subdivision (a) and a finding that the relinquishment was not in the minor's best interests. Rather, the court erroneously believed Teresa could not relinquish the minor to ICA. Since the court misunderstood both the law and its discretion, its order finding the relinquishment invalid cannot stand. The matter must be remanded to the juvenile court to consider whether it should, under section 361, subdivision (a), limit Teresa's control over the minor as it relates to her relinquishing him to ICA.

On remand, the juvenile court must determine whether Teresa's control over the minor should be limited to preclude relinquishing him to ICA for adoption. ■ The proper standard for the court to employ in making this determination is the best interests of the child at the time of the hearing. In

*Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721 [68 Cal.Rptr.2d 239], this court held the proper standard for reviewing the placement decision of an agency that has been given exclusive care and control of a dependent child is the abuse of discretion standard. The juvenile court determines whether the placement decision is patently absurd or unquestionably not in the child's best interests. (*Id.* at p. 734.) The standard here is not so deferential. The parent of a dependent child no longer has exclusive care and control of the child; the court has authority to make reasonable orders for the child's care, supervision, and custody. (§ 362, subd. (a).) Limiting the parent's ability to relinquish a dependent child to a private adoption agency is such an order when it is in the child's best interest.

Finally, petitioners suggest that this is an appropriate case in which the decision should be made final immediately. (Cal. Rules of Court, rule 24(d).) Only DSS opposes this suggestion, arguing that reducing the time available to DSS to appeal the decision will be highly prejudicial as DSS has "stringent requirements for review of important procedural decisions and documents." We adopt petitioners' suggestion. The importance to the minor in having this case decided expeditiously far outweighs the need to accommodate an adamantine bureaucracy.

## DISPOSITION

Let a peremptory writ of mandate issue directing the juvenile court to vacate its order of October 30, 2001, declaring the relinquishment to be invalid and to hold a new hearing to determine whether Teresa's parental control over the minor should be limited so as to make the relinquishment invalid. The stay issued by this court on December 7, 2001, is vacated. The alternative writ issued on March 25, 2002, is discharged. This opinion is final immediately as to this court. (Cal. Rules of Court, rule 24(d).) The parties shall bear their own costs.

Scotland, P. J., and Callahan, J., concurred.