[No. D040972. Fourth Dist., Div. One. Jan. 14, 2003.]

TAYLOR M., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY
et al., Real Parties in Interest.

## COUNSEL

Steven J. Carroll, Public Defender, and Jo Pastore, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Lisa Maldonado, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Van Deusen, Youmans and Walmsley, and Ted R. Youmans for Real Party in Interest Family to Family Adoptions Inc.

## OPINION

**O'ROURKE, J.**—Five-month-old Taylor M. has filed a petition for writ of mandate challenging the juvenile court's dismissal of her dependency petition. She contends she was denied due process because (1) the court dismissed the petition without notice, a hearing, and a statement of legal authority; and (2) insofar as the dismissal was pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam. Code, § 3400 et seq.), the UCCJEA is inapplicable. Taylor's mother, Vanessa M. (Mother) and alleged father, Marcus T., Sr. (Marcus, Sr.) agree with Taylor's position. The San Diego County Health and Human Services Agency (the Agency) asserts that the dependency petition was properly denied, as does Family to Family Adoptions Inc. (Family to Family), a private Texas adoption agency. We agree with Taylor that the juvenile court improperly dismissed the dependency petition without an adequate hearing and accordingly issue a writ of mandate.

### BACKGROUND

Taylor was born in June 2002 and immediately placed on a hold in the hospital, where she remained in intensive care for the first few weeks of her life. On June 21, the Agency filed a dependency petition alleging that Mother had tested positively for amphetamine and methamphetamine at the time of Taylor's birth. Mother admitted a history of drug use, including during pregnancy; she had had no prenatal care; and the identity of Taylor's father was unknown. The petition listed Curtis S. as an alleged father. Mother said that Marcus, Sr. might also be the father. Marcus, Sr.'s whereabouts were unknown.

Marcus, Sr. and Mother have two older children, Marcus, Jr. and Cheyenne, who are placed with Dawn M. (Marcus Sr.'s mother and Mother's stepmother).[1] Mother and Marcus, Sr.'s parental rights to Marcus, Jr. and Cheyenne were terminated in 2001, apparently due to neglect and drug use. The Agency conducted home studies of Dawn and a San Bernardino or Riverside County couple to clear both households for the co-adoption of Marcus, Jr. and Cheyenne. Before Taylor's birth, Mother promised her to Dawn and the San Bernardino or Riverside County couple as co-adoptive parents.

Around the time of Taylor's birth, Mother told a hospital social worker that she was in the process of having Taylor adopted. This was confirmed by

---

[1] Mother and Marcus, Sr. are stepsiblings. The parents of each separated; then Marcus, Sr.'s mother, Dawn, married Mother's father.

Catholic Charities, which was handling the matter for Mother, and which reported that the prospective adoptive parents were a Canadian couple. A home study of the Canadian couple had been conducted in March 2002.[2] On June 21, in San Diego County, Mother and Curtis S. signed relinquishments of parental rights through Catholic Charities.[3] Family to Family, the Texas adoption agency, was handling the matter for the Canadian couple, who had traveled to San Diego to complete the adoption.[4] Catholic Charities had initiated Interstate Compact on Placement of Children (ICPC) proceedings with Texas.

Taylor's detention hearing took place on June 24, 2002. A juvenile court referee[5] found there was a prima facie showing she was a child described by Welfare and Institutions Code section 300, subdivision (b); detained her in foster care;[6] and ordered paternity tests. While the tests apparently showed that Marcus, Sr. was Taylor's biological father, the referee never made a paternity finding, although Marcus, Sr. requested one. On September 17, the referee found that Curtis S. was not Taylor's biological father.

On June 24, 2002, Marcus, Sr. reported to the Agency that Mother had not told him that she had contacted an adoption agency; he was opposed to the Canadian couple's adoption; and he wanted Dawn to care for Taylor. However, on June 28, in San Diego County, he signed a relinquishment through Catholic Charities. On July 2, he said that he had changed his mind and wanted the Canadian couple to adopt Taylor. He subsequently expressed a desire to revoke his relinquishment.

In addition to the relinquishments, Mother; Marcus, Sr.; and Curtis S. all signed agreements to submit to Texas jurisdiction. Mother's and Curtis S.'s agreements bear the date July 1, 2002. Marcus, Sr.'s agreement lists the date July 1 just under his signature, but just above the notary public's signature lists the date June 1. All three documents were executed in California.

At a July 2, 2002 special hearing, the referee authorized visitation for the Canadian couple. They began visits soon after. Unnamed "paternal relatives"

---

[2]Mother had received financial support from the Canadian couple, and had also accepted money from a couple in San Jose and from a couple in Utah to facilitate their possible adoption of the baby.

[3]Actually, while Mother's document is entitled "Affidavit for Voluntary Relinquishment of Parental Rights to Licensed Child-Placing Agency," Curtis's document is entitled "Affidavit of Waiver of Interests in Child." For purposes of simplicity, we refer to both documents, as well as the document signed by Marcus, Sr., discussed below, as relinquishments.

[4]The Canadian couple's attorney explained that they had employed a Texas adoption agency because California had a one-year residency requirement.

[5]A different referee (referee) presided at all subsequent hearings.

[6]After her release from the hospital, Taylor was detained in a foster home in Escondido, then in a foster home in El Cajon.

apparently began visits later in July. On July 12, Catholic Charities notified the Agency that the Texas Department of Protective and Regulatory Services had approved the ICPC. The approval allowed Taylor to be placed with Family to Family.

At the July 16, 2002 jurisdictional hearing, the referee continued the matter to July 31 to allow counsel to research whether Texas or California law applied; whether the relinquishments were valid; and whether motions to withdraw the relinquishments should be filed.

At a July 24, 2002 special hearing set by Mother, the Canadian couple, and Family to Family, Family to Family moved to dismiss the dependency proceeding on the ground that the relinquishments were valid and irrevocable, a proceeding to terminate parental rights had been filed in Texas on July 23, all requirements under Texas law for the Family to Family adoption had been met, and Family to Family was prepared to take custody of Taylor immediately. Following a discussion about standing, the validity of the relinquishments, and whether California or Texas had jurisdiction, as well as other issues, the referee changed the July 31 hearing to a special hearing on those issues and the issues of paternity; the request by counsel for Marcus, Sr. for a guardian ad litem for his client;[7] and whether Dawn's home should be inspected for detention and placement and her visits be unsupervised. The court continued the jurisdictional hearing to August 26.

At the July 31, 2002 special hearing, the referee outlined the issues; discussed the matter by telephone with the Texas judge; stayed the dependency proceedings; set an evidentiary hearing for August 29 on the validity, under Texas law, of the relinquishments; and appointed a guardian ad litem for Marcus, Sr.

At an August 21, 2002 special hearing set by the Agency, the referee again spoke to the Texas court; stated he was exercising emergency jurisdiction under the UCCJEA; and decided that the Texas court would hear the relinquishment issue.

On August 26, 2002, the referee told Marcus, Sr. to file an action to set aside his relinquishment in Texas within three weeks or he would dismiss the dependency case and the adoption would proceed; vacated the August 29

---

[7]The request was "based on [Marcus, Sr.'s] conduct [and] history of severe mental illness, including a hospitalization for that illness."

hearing date; relieved Marcus, Sr.'s guardian ad litem;[8] suspended the dependency proceedings; and continued the matter to September 17.

On September 17, 2002, Marcus, Sr.'s attorney told the court that Marcus, Sr. had filed "paperwork" in Texas. Taylor's attorney noted that the "matter in Texas could be continuing indefinitely" and requested that the stay of the dependency proceedings be lifted and jurisdictional and dispositional hearings be set. The attorney appearing for the Agency asked that the matter be continued for a brief time so that the Agency attorney who was most familiar with the case could respond. The referee stated that he had telephoned the Texas judge on August 28 and intended to call again to ask how long the Texas proceedings might last. The referee continued the matter to September 25.

At the outset of the September 25, 2002 hearing, the referee said that on September 18, the Texas judge had stated that after a party in the Texas action requested an evidentiary hearing, the matter would be calendared within 30 days. The referee said that in light of this statement, he would probably not dismiss the dependency case unless and until the relinquishment issue were resolved in Family to Family's favor.

Family to Family's counsel then reported that a hearing on Marcus, Sr.'s motion to transfer the case from Texas to California and on other matters had been set for September 30, 2002, in Texas. Family to Family renewed its motion to dismiss the dependency petition, joined by the Canadian couple and Mother. Marcus, Sr.'s counsel argued that dismissing the petition would be premature in view of the pending Texas proceedings and that there was still a protective issue. The Agency submitted on the dismissal issue, noting that it was opposed to dismissal but that in view of the relinquishments, technically there was no protective issue unless Marcus, Sr.'s relinquishment were held to be invalid, and that the parents lacked standing. The Agency asked that if the referee did dismiss the petition, he order Taylor released to Family to Family. Taylor's counsel renewed her request that the stay of the dependency proceedings be lifted and jurisdictional and dispositional hearings be set.

The referee denied Taylor's counsel's request, found there was no protective issue, dismissed the petition, and invoked UCCJEA emergency jurisdiction to place Taylor in Family to Family's custody. Taylor's counsel asserted that she had a right to a contested hearing before dismissal and alternatively asked for a stay of the dismissal order so she could file a writ petition. The referee denied the request.

[8]The guardian ad litem asked to be relieved, stating that Marcus, Sr. was capable of proceeding on his own.

After Taylor's counsel asked for a rehearing, the juvenile court issued a stay restricting Taylor's travel out of the county pending receipt of a reporter's transcript of the September 25, 2002 hearing. On October 8, the court denied the rehearing request and stayed the dismissal of the dependency petition until the close of business on October 11.

On October 10, 2002, Taylor's counsel filed this petition for writ of mandate. On October 11, we stayed the dismissal of the dependency petition until further order and directed the parties to respond to the petition. On October 17, the Texas judge denied Marcus, Sr.'s request to transfer the matter to California and held that his relinquishment was valid. On October 25, we denied the Agency's motion to deny the writ petition as moot.[9] On November 14, we issued an order to show cause.

## DISCUSSION

■ The initial question here is one of standing. While the Canadian couple who wish to adopt Taylor are not parties to this writ proceeding, they participated in the hearings below and presumably will want to do so again upon remand. Family to Family participated in the hearings in juvenile court, has filed pleadings in this writ proceeding, and presumably will also wish to continue its participation.

The Canadian couple and Family to Family lack the standing accorded to parents and de facto parents. (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2002 ed.) §§ 2.60[2][a], p. 2-93, 2.60A[3], p. 2-104.) A de facto parent is one "who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Cal. Rules of Court, rule 1401(a)(8).) It is clear that the Canadian couple (and for that matter, Family to Family) lacks the "close relationship" with Taylor such "that the court would profit by hearing [their] views as to [her] best interests." (*In re B. G.* (1974) 11 Cal.3d 679, 692, fn. 18 [114 Cal.Rptr. 444, 523 P.2d 244].) Indeed, while the Canadian couple began visiting Taylor in early July 2002, the record fails to disclose the quantity and quality of that visitation. Furthermore, as discussed below, the relinquishments are invalid;[10] they therefore do not confer standing on either the Canadian couple or Family to Family.

In addition to the lack of standing of Family to Family, the entity that requested dismissal of the dependency petition, there are two other factors

---

[9]The Agency argued that the relinquishments rendered Taylor's writ petition moot. It now renews its motion, which we again deny.

[10]We therefore need not address the Agency's contention that Mother and Marcus, Sr. lack standing because they relinquished their parental rights.

bearing on the propriety of the dismissal: (1) whether Taylor was entitled to and denied an evidentiary hearing and (2) whether a protective issue remained.

██ ·We first consider whether Taylor was entitled to an evidentiary hearing before dismissal of the dependency petition. In *Guadalupe A. v. Superior Court* (1991) 234 Cal.App.3d 100 [285 Cal.Rptr. 570], at the 12-month review hearing, at the close of the department of social services' case, the juvenile court made a sua sponte motion under Welfare and Institutions Code section 350, subdivision (c)[11] on the ground that the department had not met its burden of proving that it would be detrimental to return the dependent child to her mother. (*Guadalupe A. v. Superior Court, supra,* 234 Cal.App.3d at pp. 104-105.) The child's counsel objected, arguing that she should have an opportunity to present her case. (*Id.* at pp. 104-106.) The juvenile court granted the motion without taking further evidence and ordered that the child be returned to her mother. (*Id.* at pp. 105-106.) The reviewing court reversed and remanded, holding that while the juvenile court's refusal to let the child's counsel present evidence before ruling on the motion was consistent with the existing version of Welfare and Institutions Code section 350, subdivision (c), the refusal constituted prejudicial error because it "was inconsistent with the mandate to fully protect the interests of the minor." (*Guadalupe A. v. Superior Court, supra,* 234 Cal.App.3d at p 107.)

In *Allen M. v. Superior Court* (1992) 6 Cal.App.4th 1069 [8 Cal.Rptr.2d 259], this court held that when the department of social services wishes to

---

[11]At the relevant time, that statute stated: "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department has been closed, the court, on motion of the minor, parent or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing the evidence then before it, finds that the probation department has not met its burden. That action includes, but is not limited to, the dismissal of the petition and release of the minor at a jurisdictional hearing, the return of the minor at an out-of-home review held prior to the permanency planning hearing, or the termination of jurisdiction at an in-home review. If the motion is not granted, the minor, parent, or guardian may offer evidence without first having reserved that right."

In 1994, the Legislature amended Welfare and Institutions Code section 350, subdivision (c), so that it now reads: "At any hearing in which the probation department bears the burden of proof, after the presentation of evidence on behalf of the probation department *and the minor* has been closed, the court, on motion of the minor, parent, or guardian, or on its own motion, shall order whatever action the law requires of it if the court, upon weighing *all of* the evidence then before it, finds that the *burden of proof has not been met.* That action includes, but is not limited to, the dismissal of the petition and release of the minor at a jurisdictional hearing, the return of the minor at an out-of-home review held prior to the permanency planning hearing, or the termination of jurisdiction at an in-home review. If the motion is not granted, the *parent or guardian* may offer evidence without first having reserved that right." (Welf. & Inst. Code, § 350, subd. (c), italics added.)

dismiss a dependency petition over the child's objection, "the juvenile court must determine whether dismissal is in the interests of justice and the welfare of the minor." (*Id.* at pp. 1071-1072.) The department of social services had filed two dependency petitions, one alleging sexual abuse by the father and one alleging domestic violence and alcohol abuse, then, at the readiness hearing, moved to dismiss the sexual abuse petition due to insufficient evidence and the parents' willingness to admit the other allegations. (*Ibid.*) The children's counsel objected to the dismissal for evidentiary and other reasons. (*Id.* at p. 1072.) The juvenile court denied the dismissal motion and set a contested jurisdictional hearing. (*Id.* at pp. 1071-1072, 1075.) The father sought a writ of mandate. (*Ibid.*) In denying the writ petition, this court stated: "We conclude that when the Department wishes to dismiss a petition . . . it must notify all interested persons in order to afford each the opportunity to object and be heard. If a parent or minor does object, resolution of the matter is properly by an order to show cause hearing requiring the Department to establish why the petition should be dismissed. . . . Although the court may accord great deference to the Department's expertise, the primary focus of the court is the determination of whether dismissal is in the interests of justice and the welfare of the minor. On that basis the court may either grant the dismissal or order the Department to proceed with the petition." (*Id.* at p. 1074.)[12]

In *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1077-1078 [117 Cal.Rptr.2d 670], this court determined that "the Agency may not unilaterally dismiss a supplemental petition it filed to remove a dependent child from a parent's physical custody over the objection of minor's counsel." (*Id.* at p. 1070.) Rather, "the Agency must show that dismissal is in the interests of justice and welfare of the child." (*Ibid.*) While this court concluded that the juvenile court "should have required the Agency to show cause why the supplemental petition should be dismissed," the error was harmless; the mother did not claim a due process denial and "the court

---

[12]The Agency argues that *Allen M. v. Superior Court, supra,* 6 Cal.App.4th 1069 is inapplicable because the dismissal here was on the referee's own motion, not on the Agency's. This argument ignores the fact that the question of dismissal first arose here when Family to Family so moved. In any case, we see no reason why the identity of the moving party should affect the need to ensure that a dismissal does not compromise the child's welfare or the interests of justice. We also note that the motion in *Guadalupe A. v. Superior Court, supra,* 234 Cal.App.3d 100 was sua sponte.

The Agency further argues that *Allen M. v. Superior Court, supra,* 6 Cal.App.4th 1069 is inapplicable because in the court below, Taylor's counsel argued against dismissal solely to trigger a relative placement preference and facilitate placement with Dawn; did not seek to present evidence supporting the dependency petition; and could not have done so because due to the relinquishments, there was no longer a basis for the petition. The juvenile court's duty to protect Taylor is not affected by the content of her counsel's argument, however. Moreover, the relinquishments are invalid.

admitted the Agency's various reports and the many witnesses were thoroughly examined in the course of a full evidentiary hearing." (*Id.* at pp. 1070, 1078.)

Based on the above case law, we conclude that Taylor was entitled to an evidentiary hearing before the referee dismissed the dependency petition. She did not receive one. The dismissal issue was first raised on July 24, 2002, and the discussion continued during the next five hearings, including the September 25 hearing when the referee ultimately dismissed the petition. During those hearings, the referee expressed various points of view on the issues, as did the parties,[13] and Taylor's counsel objected to dismissal and asked that the court set a contested jurisdictional and dispositional hearing.

The error in denying Taylor an evidentiary hearing was not harmless. The only items of evidence adduced were the relinquishments and related documents attached to the dismissal motion. In that there was little if any other information concerning the continuing existence of a protective issue, the dismissal was inconsistent with the juvenile court's duty to protect Taylor's welfare and act in the interests of justice. (*Guadalupe A. v. Superior Court, supra,* 234 Cal.App.3d at p. 107; *Allen M. v. Superior Court, supra,* 6 Cal.App.4th at pp. 1071-1072, 1074; *Kimberly R. v. Superior Court, supra,* 96 Cal.App.4th at pp. 1070, 1077-1078; Welf. & Inst. Code, § 350, subd. (c).)

■ We conclude that the dismissal order must be vacated and the matter remanded. For the guidance of the juvenile court on remand, we discuss whether a protective issue may remain, necessitating the continuation of the dependency proceedings rather than dismissal of the petition. In this case, the existence of a protective issue appears to depend, at least in part, on the status of the relinquishments by Mother and Marcus, Sr.

In *Teresa J. v. Superior Court* (2002) 102 Cal.App.4th 366 [125 Cal.Rptr.2d 506], after the child was declared a dependent, his mother relinquished him to a private adoption agency. (*Id.* at p. 368.) The juvenile court determined that the relinquishment was invalid, holding that a dependent child can be relinquished only to the State Department of Social Services or a local public adoption agency. (*Id.* at pp. 368, 370.) The reviewing court disagreed, concluding "that a birth parent may relinquish a

---

[13]The Agency argues that Mother waived her right to object to dismissal of the dependency petition by supporting the dismissal in the trial court. It is equally true, however, that at the July 24 hearing, the Agency stated that the relinquishments might be voidable, which is contrary to its current position. Additionally, at the September 25 hearing, it stated, albeit with qualifications, "The Agency would be opposed to dismissal today." This too conflicts with its current position.

dependent child to a private adoption agency, subject to the juvenile court's power to limit the parent's control over the child." (*Id.* at p. 369.) It remanded for the juvenile court to exercise its discretion under Welfare and Institutions Code section 361, subdivision (a)[14] to determine whether the mother's control over the child should be limited to prevent the relinquishment. (*Teresa J. v. Superior Court, supra,* 102 Cal.App.4th at pp. 369, 375-376.)

The reviewing court in *Teresa J. v. Superior Court, supra,* 102 Cal.App.4th 366, reasoned: "The court may limit the control of the parent over the dependent child. ([Welf. & Inst. Code,] § 361, subd. (a).) There is an exception to this power of the court where the parent relinquishes the dependent child to a public adoption agency ([Welf. & Inst. Code,] 361(b)), but there is no exception where the relinquishment is to a private adoption agency. Thus, the juvenile court retains its broad power to limit the parent's control over the dependent child, which includes the parent's ability to relinquish the child to a private adoption agency. In exercising this power to limit the parent's control, the juvenile court may consider the concerns raised by the various real parties in interest and whether such concerns militate against allowing the relinquishment to a private adoption agency. In this decision, as in all others, the juvenile court must act in the best interests of the dependent child. . . . [¶] Here, the juvenile court did not declare the relinquishment invalid as a result of the exercise of its power under [Welfare and Institutions Code] section 361, subdivision (a) and a finding that the relinquishment was not in the minor's best interests. Rather, the court erroneously believed Teresa could not relinquish the minor to [the private adoption agency]. Since the court misunderstood both the law and its discretion, its order finding the relinquishment invalid cannot stand. The matter must be remanded to the juvenile court to consider whether it should, under [Welfare and Institutions Code] section 361, subdivision (a), limit Teresa's control over the minor as it relates to her relinquishing him to [the private adoption agency]." (*Teresa J. v. Superior Court, supra,* 102 Cal.App.4th at p. 375.)

While here, as distinguished from *Teresa J. v. Superior Court, supra,* 102 Cal.App.4th 366, there has been no declaration of dependency, there is an

---

[14]Welfare and Institutions Code section 361 states, in pertinent part:
"(a) In all cases in which a minor is adjudged a dependent child of the court on the ground that the minor is a person described by Section 300, the court may limit the control to be exercised over the dependent child by any parent or guardian and shall by its order clearly and specifically set forth all those limitations. . . .The limitations may not exceed those necessary to protect the child.
"(b) Subdivision (a) may not be construed to limit the ability of a parent to voluntarily relinquish his or her child to the State Department of Social Services or to a licensed county adoption agency at any time while the child is a dependent child of the juvenile court if the department or agency is willing to accept the relinquishment."

important parallel between the two cases. The mother in *Teresa J.* was denied reunification services. (*Id.* at p. 369.) The parents here are ineligible for services because their rights to Taylor's two older siblings were terminated and they have apparently not made a reasonable effort to treat the underlying problems. (Welf. & Inst. Code, § 361.5, subd. (b)(11).) This preclusion of reunification amounts to a limitation of parental control over Taylor comparable to that in *Teresa J.*

Once Taylor became the subject of a dependency petition and the juvenile court intervened in her life, the court was required to decide whether to limit her parents' right to relinquish her in the context of her best interest. Relinquishment would sever her ties to her biological family, including her two siblings. The Legislature has declared its intent "to remove barriers to adoption by relatives of children who are already in the dependency system or who are at risk of entering the dependency system." (Fam. Code, § 8714.5, subd. (a)(1).) It has further declared: "This goal will be achieved by empowering families, including extended families, to care for their own children safely and permanently whenever possible, by preserving existing family relationships, thereby causing the least amount of disruption to the child and the family, and by recognizing the importance of sibling and half-sibling relationships." (Fam. Code, § 8714.5, subd. (a)(2).) Here, this goal was ignored when the referee prematurely dismissed the dependency petition.

Moreover, the Texas court lacked jurisdiction to accept the relinquishments and the agreements to submit to Texas jurisdiction and to rule on Marcus, Sr.'s challenge to his relinquishment. At the detention hearing, the referee detained Taylor in foster care, temporarily removing her from parental custody and temporarily giving the Agency custody and providing for visitation by Mother. Thus, the detention order was a child custody determination as defined by the UCCJEA. (Fam. Code, § 3402, subds. (c), (n).) The referee had jurisdiction to make this determination because California is Taylor's home state. (Fam. Code, §§ 3402, subd. (g), 3421, subd. (a)(1).) With exceptions inapplicable here,[15] "a court of this state that has made a child custody determination consistent with [Family Code] Section 3421 or 3423 has exclusive, continuing jurisdiction over the determination." (Fam. Code, § 3422, subd. (a).) Indeed, the detention order was made before the

---

[15]The exceptions are inapplicable because Taylor has "a significant connection with [California] and . . . substantial evidence [remains] available [here] concerning [her] care, protection, training and personal relationships" (Fam. Code, § 3422, subd. (a)(1)); she presently resides in California (Fam. Code, § 3422, subd. (a)(2)); and the provisions for temporary emergency jurisdiction do not apply, as they provide for the protection from immediate harm of a child who is merely present in California (Fam. Code, §§ 3422, subd. (a)(1), 3424; *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1174-1175 [108 Cal.Rptr.2d 493]).

Texas court took any action whatsoever. (Fam. Code, § 3426.) The juvenile court here had exclusive jurisdiction; to conclude otherwise would be to encourage forum shopping. (*In re C. T.* (2002) 100 Cal.App.4th 101, 106 [121 Cal.Rptr.2d 897].)

 ·Nor was the referee's referral of the relinquishment issue to the Texas court proper on grounds of forum non conveniens. Factors relevant to this determination include the following:

"(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

"(2) The length of time the child has resided outside this state.

"(3) The distance between the court in this state and the court in the state that would assume jurisdiction.

"(4) The degree of financial hardship to the parties in litigating in one forum over the other.

"(5) Any agreement of the parties as to which state should assume jurisdiction.

"(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.

"(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

"(8) The familiarity of the court of each state with the facts and issues in the pending litigation." (Fam. Code, § 3427, subd. (b).) Of these factors, only No. (5) weighs in favor of California ceding jurisdiction to Texas. While the parents agreed to submit to Texas jurisdiction, however, Taylor did not. To the extent that the referee concluded that Texas was a more convenient forum, it abused its discretion. (Cf. *Brossoit v. Brossoit* (1995) 31 Cal.App.4th 361, 371 [36 Cal.Rptr.2d 919].)

DISPOSITION

Let a peremptory writ of mandate issue directing the juvenile court to vacate its order dismissing the dependency petition and to hold a new

hearing, consistent with this opinion, regarding whether Taylor's welfare and the interests of justice require dismissal of the dependency petition.

Kremer, P. J., and Benke, J., concurred.