[No. A124021. First Dist., Div. One. Nov. 30, 2009.]

In re R.S., a Person Coming Under the Juvenile Court Law.
DEL NORTE COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Petitioner and Respondent, v.
M.T. et al., Objectors and Appellants.

## Counsel

Donna L. Hall and Valerie E. Sopher, under appointments by the Court of Appeal, for Objectors and Appellants.

Dohn R. Henion, County Counsel, and Ian W. Trueblood, Deputy County Counsel, for Petitioner and Respondent.

Janet G. Sherwood, under appointment by the Court of Appeal, for the Minor.

## Opinion

**MARCHIANO, P. J.**—The parents of the minor R.S. executed a relinquishment of parental rights with the State Department of Social Services (State Adoptions) in conformance with Family Code section 8700. Subsequently, the Juvenile Court of Del Norte County terminated their parental rights. M.T. (Mother) and R.S. (Father) appeal from that order, made pursuant to Welfare and Institutions Code section 366.26.[1] We consider first Father's contention—in which counsel for the minor has joined—that the juvenile court erred in holding the section 366.26 hearing and in issuing orders that terminated parental rights and granted a request by the minor's foster parents (Foster Parents) to be designated as prospective adoptive parents pursuant to section 366.26, subdivision (n). Father argues that in doing so the court impermissibly interfered with a final, voluntary relinquishment the parents had made to State Adoptions. This relinquishment included a designation of persons other than the Foster Parents as the intended adoptive placement, namely, Mother's sister K.F. (Aunt) and Aunt's husband P.F. (See Fam. Code, § 8700, subd. (f).)

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise specified.

As discussed below, we agree with this contention and reverse the orders of the juvenile court. Second, we conclude that it is unnecessary to address Mother's contention, that the court violated notice requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA), because any defect in the notice provided to Indian tribes, concerning the minor's dependency proceeding, was rendered moot by the parents' voluntary relinquishment to State Adoptions.

## BACKGROUND

In November 2007, the Del Norte County Department of Health and Human Services (Department) initiated these proceedings as to the minor (born June 2006). On January 9, 2008, the juvenile court established dependency jurisdiction over the minor after sustaining allegations under section 300, subdivisions (b), (g), and (j). After a dispositional hearing on January 25, 2008, the court directed the minor's removal for out-of-home placement and ordered the Department to provide reunification services to the parents. On this date, the minor was placed with Foster Parents, D.D. and K.D.

At the conclusion of the six-month status review hearing (six-month hearing) on August 5, 2008, the juvenile court terminated reunification services and set the matter for a hearing under section 366.26. Mother sought review of this order by petition for extraordinary writ. The underlying facts and procedural background up to this point are summarized in this court's decision denying Mother's petition. (*M.T. v. Superior Court* (Nov. 14, 2008, A122647) [nonpub. opn.].)

The juvenile court held a hearing on September 12, 2008, to review visitation between the parents and the minor pending the section 366.26 hearing. At this hearing, Mother's counsel indicated that her preference, since the termination of reunification efforts, was to have the minor adopted by Aunt, who resided in Clovis, Fresno County. On the other hand, Foster Parents had retained counsel and were "jumping through all the hoops in as vigorous a way as they can" in seeking to adopt the minor. For this reason, Mother's counsel moved for a hearing on her request to have the minor placed with Aunt pursuant to the relative placement provisions of section 361.3.[2] Counsel representing Aunt, who was present at the hearing, mentioned to the court that both Mother and Father were in the process of

---

[2] Prior to the dispositional hearing, Aunt herself had made a request to the Department for relative placement. It appears this earlier request was not granted largely because a relative placement in Fresno County, at that point, would have interfered with the parents' reunification efforts in Del Norte County.

preparing a "designated relinquish[ment]" with State Adoptions—that is, a voluntary relinquishment of their parental rights that would include their designation of a person with whom they intended the minor to be placed for adoption. (See Fam. Code, § 8700, subd. (f).) Minor's trial counsel supported Mother's request for a relative placement hearing, noting that Aunt had made "a very strong showing," and that "it's better normally . . . to leave the child with family rather than with foster parents." Counsel for the Department stated that State Adoptions should be involved in the hearing.

At the outset of the relative placement hearing under section 361.3, Aunt's counsel again noted that both parents were "prepared to sign" a relinquishment of their rights with State Adoptions, designating Aunt as the person they intended the minor to be placed with for adoption. S.A. (Grandmother), the mother of both Aunt and Mother, appeared at the hearing and informed the court that the minor's placement with Aunt in Clovis would interfere with her relationship with the minor, as well as the minor's relationship with a seven-year-old half sibling, F., who lived with Grandmother. Grandmother further stated she herself was "being considered for adoptive placement" and, as she had previously adopted F., queried why she should not be able to adopt the minor as well. Mother testified to her desire that the minor be placed with Aunt, stating she and minor had lived with Aunt from before his birth until he was almost one year of age. Mother explained neither she nor Aunt had been able to maintain a relationship with F.—her biological daughter and the minor's half sibling—because Grandmother would not allow it. She indicated, however, that Aunt would ensure the minor had contact with the minor's two other half siblings, J. and C., who had been adopted by their paternal grandmother. The State Adoptions specialist for Del Norte County testified that she had only recently received an approved home study of Aunt from the Fresno branch of State Adoptions. She stated that several families, including Foster Parents and Grandmother, were also interested in adopting the minor, and she had not yet completed her adoption assessment for the section 366.26 hearing. She recommended that the minor not be moved from his current placement with Foster Parents before she completed her assessment. At the conclusion of the hearing, on October 16, the court denied Mother's request for immediate placement of the minor with Aunt.

Meanwhile, both Foster Parents and Aunt and P.F. filed requests for de facto parent status. The juvenile court granted these requests on November 7 and November 13, 2008, respectively. On November 17, Foster Parents additionally filed a request to be designated as prospective adoptive parents pursuant to section 366.26, subdivision (n).

The Department's report prepared for the section 366.26 hearing, completed and filed December 3, 2008, recommended that the juvenile court terminate the parents' parental rights and select adoption as the permanent plan. The Department further recommended that the court designate Foster Parents as the prospective adoptive parents and that the minor remain placed with them for adoption.

The assessment by State Adoptions, completed on December 2, 2008, by the Arcata district manager, was submitted as an attachment to the Department's report. This assessment noted that in late November, Mother and Father had "completed designated relinquishments identifying [Aunt and P.F. as] the prospective adoptive parents." State Adoptions' central office had "received and acknowledged" the completed relinquishment. State Adoptions thus regarded Aunt and P.F. as the minor's prospective adoptive parents, deeming them "suitable and committed to the adoption." It recommended that the juvenile court "take into consideration the birth parents' wishes, as reflected in their designated relinquishment." State Adoptions noted that "[g]iven the aforementioned designated relinquishments, in which the birth parents voluntarily terminated their parental rights, it is not necessary for the court to also move to terminate the parental rights of [Mother and Father]." Declarations attached to the assessment averred that State Adoptions headquarters had issued an acknowledgment of the relinquishment on December 1.[3]

At the outset of the section 366.26 hearing, on December 5, 2008, the juvenile court noted that it had before it the Department's "report and its attachment." Counsel for the minor pointed out, "as a procedural matter" that both parents had "officially relinquished their claims," and thus there was no "necessity for the classical reason of a [section 366.26] hearing." Counsel for Foster Parents agreed, stating in effect there was no issue requiring a contested section 366.26 hearing, as the parents could not contest the termination of parental rights they had already relinquished. The court continued the hearing without making any determination on this point.

---

[3] When a voluntary relinquishment such as that made by Father and Mother is made to State Adoptions or some other licensed adoption agency, the agency accepting the relinquishment must send a copy to State Adoptions for filing. The relinquishment becomes final 10 business days after receipt of the filing by State Adoptions or when State Adoptions sends written acknowledgment of receipt, whichever is earlier (unless a longer period for finality is necessary due to causes beyond the control of State Adoptions). (Fam. Code, § 8700, subd. (e)(1).) With one exception discussed below, a voluntary relinquishment, once final, may be rescinded only by mutual consent of the relinquishing parents and the agency that accepted the relinquishment. (Fam. Code, § 8700, subd. (e)(2).) The filing of the relinquishment with State Adoptions operates to *terminate* all parental rights and responsibilities, again with one exception discussed below in the opinion. (Fam. Code, § 8700, subd. (j).)

At the continued hearing, on December 19, 2008, the juvenile court admitted the Department's report and the State Adoptions assessment into evidence. Counsel for Aunt and P.F. expressed his view that "the only issue to be resolved" was whether *State Adoptions* determined there would be "serious detriment" to the minor if he were removed from his current placement with Foster Parents. Counsel for Foster Parents stated there was the additional issue of Foster Parents' pending request for designation as prospective adoptive parents pursuant to section 366.26, subdivision (n). Father's counsel made an objection to the court's termination of parental rights based on the designated relinquishment of those rights. Counsel for Mother essentially expressed willingness to submit on the Department's report and the State Adoptions assessment. The court, meanwhile, twice posed the question whether "there [was] any reason not to complete our objectives under [section] 366.26," that is, to "terminate parental rights and select adoption as the permanent plan." Asking for any disagreement, and "[h]earing none," the court proceeded to terminate both parents' parental rights, made a finding that the minor was adoptable, and ordered a permanent plan of adoption.

Counsel for Foster Parents then renewed his request that they be designated as prospective adoptive parents pursuant to section 366.26, subdivision (n). Counsel for Aunt and P.F. objected on the ground that State Adoptions had already determined that placement with Aunt was appropriate pursuant to the parents' designated relinquishments. The juvenile court did not find this objection persuasive, deeming the provisions of section 366.26, subdivision (n), to be a procedure "removing" State Adoptions' placement discretion "in a limited way." The court concluded that Foster Parents, Aunt and P.F., and Grandmother were *all* to be designated as prospective adoptive parents, and continued the matter for an evidentiary hearing relating to the minor's ultimate adoptive placement.

The parents' appeal followed. (§ 395.)

### DISCUSSION

I. *The Juvenile Court's Orders Impermissibly Impaired the Voluntary Relinquishment*

 A. *Father's Contention*

Father argues that the juvenile court erred in holding the hearing under section 366.26 after the voluntary relinquishment he and Mother made to

State Adoptions. He points out that the juvenile court had no right to limit their ability to make a voluntary relinquishment to a public adoptions agency that was willing to accept it. (§ 361, subd. (b).) Father also points out that, once their designated relinquishment became final—before the date set for the section 366.26 hearing—State Adoptions was vested with exclusive custody and control of the minor until an order of adoption is granted. (Fam. Code, § 8704, subd. (a).) In Father's view, the court's decision to hold the section 366.26 hearing, and to make orders that included one that terminated his and Mother's parental rights and one that granted Foster Parents' request for designation as prospective adoptive parents under section 366.26, subdivision (n), was error that impermissibly and prejudicially interfered with their voluntary relinquishment to State Adoptions, with its designation of Aunt and P.F. as the intended adoptive parents. Appellate counsel for the minor has filed a responding brief that joins in this argument.

### B. *The Statutory Scheme*

<span style="background:black"></span> Father's contention calls for a detailed examination of the Family Code provisions governing voluntary relinquishment and the applicable provisions of the dependency law. Once a child is adjudged a dependent of the juvenile court, that court is authorized to issue orders that limit the control a parent may exercise over that child, to the extent necessary to protect the child. (§ 361, subd. (a).) The juvenile court may not, however, "limit the ability of a parent to voluntarily relinquish his or her child to [State Adoptions] or to a licensed county adoption agency at any time while the child is a dependent child of the juvenile court, if [State Adoptions or the county adoption agency] is willing to accept the relinquishment." (§ 361, subd. (b).)

<span style="background:black"></span> A birth parent may relinquish a child to State Adoptions or a licensed adoption agency[4] by a written statement signed before two subscribing witnesses and acknowledged before an authorized official of State Adoptions or the licensed adoption agency. (Fam. Code, § 8700, subd. (a).) To be effective, a certified copy of the relinquishment must be sent to and filed with State Adoptions. (Fam. Code, § 8700, subd. (e)(1).) As noted above, a

---

[4] A "licensed adoption agency" is one licensed by State Adoptions to provide adoption services, including both county adoption agencies and private adoption agencies. (Fam. Code, § 8530.) While section 361, subdivision (b), prohibits a juvenile court from limiting the ability of a birth parent to make a voluntary relinquishment of a dependent child either to State Adoptions or a county adoption agency, the court may, nevertheless, limit the ability of a birth parent to make a voluntary relinquishment of a dependent child to a licensed *private* adoption agency, pursuant to its authority to limit parental control under section 361, subdivision (a). (*Teresa J. v. Superior Court* (2002) 102 Cal.App.4th 366, 375–376 [125 Cal.Rptr.2d 506].)

relinquishment generally becomes final when State Adoptions sends a written acknowledgment of receipt of the relinquishment, or in any event after the lapse of 10 business days after State Adoptions receives the relinquishment for filing. (See fn. 3, *ante*.)

■ After a relinquishment becomes final, it may be rescinded only by mutual consent of the relinquishing parent and State Adoptions or the licensed adoption agency. (Fam. Code, § 8700, subd. (e)(2).) There is, however, one exception. As was done by Father and Mother in this case, a birth parent may name in his or her voluntary relinquishment the person or persons with whom he or she intends that placement of the child for adoption be made by State Adoptions or the licensed adoption agency. (Fam. Code, § 8700, subd. (f).) State Adoptions or the licensed adoption agency may not accept a relinquishment under Family Code section 8700—including one that designates the intended adoptive parent—unless the agency determines it is able to place the child for adoption.[5] (Cal. Code Regs., tit. 22, § 35135, subd. (a)(2).) Nevertheless, the provisions for voluntary relinquishment recognize that State Adoptions or the licensed adoption agency, even after accepting a designated relinquishment, might ultimately decide either not to place the child with the designated persons or to remove the child from placement with the designated persons prior to granting of adoption. In such an event, State Adoptions or the licensed adoption agency must provide notice of its decision to the relinquishing birth parent. (Fam. Code, § 8700, subd. (g).) The relinquishing birth parent then has 30 days from the mailing of the notice in which to rescind his or her relinquishment, or to rescind that relinquishment and make a new one that designates a different person or persons for adoptive placement.[6] (Fam. Code, § 8700, subd. (h).) With the exception of this right to rescind a designated relinquishment when the designated placement is terminated before an adoption order is granted, the filing of a voluntary relinquishment with State Adoptions operates to terminate all parental rights and responsibilities with regard to the child. (Fam. Code, § 8700, subd. (j).)

When a birth parent has voluntarily relinquished a child for adoption under Family Code section 8700, and that child is a dependent of the juvenile court, the adoption agency accepting the relinquishment must, within five court days, provide written notice of the relinquishment to the juvenile court having

---

[5] Thus, for example, the adoptions specialist in this case testified at the relative placement hearing that State Adoptions would not "randomly" accept a designated relinquishment, but would first need to complete an approved home study of the designated placement and determine additionally that the designated placement was in the child's best interest.

[6] Of course, to be effective the new designation must be accepted by State Adoptions or the licensed adoption agency and filed with State Adoptions. (See Fam. Code, § 8700, subd. (h)(3).)

jurisdiction, counsel for the minor, if any, and counsel for the relinquishing parent, if any. (Fam. Code, § 8700, subd. (i).)

■ When a child is freed for adoption—whether by voluntary relinquishment under Family Code section 8700 or by termination of parental rights—the agency to which the child has been freed becomes responsible for the care of the child, and is entitled to exclusive custody and control of the child until an order of adoption is granted. (Fam. Code, § 8704, subd. (a).) The agency to which the child has been freed for adoption may, in its discretion, terminate a temporary care placement or an adoptive placement at any time before an adoption order is granted. (Fam. Code, § 8704, subd. (a).) The juvenile court retains jurisdiction over a dependent child freed for adoption, until the order of adoption is granted. (See Welf. & Inst. Code, §§ 366.29, subd. (c), 366.3, subd. (a).) Its oversight of placement decisions by the agency having exclusive custody and control, however, is limited. Once a petition for adoption has been filed by the prospective adoptive parents, the agency having exclusive custody and control may not remove the child from an adoptive placement with these parents without approval of the court—that is, the juvenile court or family law court in which the adoption petition has been filed. (Fam. Code, § 8704, subd. (b); see Welf. & Inst. Code, § 366.26, subd. (e).) But before the prospective adoptive parents file an adoption petition, the juvenile court may interfere with or disapprove a placement decision made by the agency having exclusive custody and control only if the agency's decision is " 'patently absurd or unquestionably not in the minor's best interests.' " (*In re Harry N.* (2001) 93 Cal.App.4th 1378, 1397 [114 Cal.Rptr.2d 46], quoting *Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 725 [68 Cal.Rptr.2d 239].)

■ This limitation on the juvenile court's oversight of the adoption agency's placement decisions was modified by 2005 legislation. "If the court, *by order or judgment, declares the child free from custody and control of both parents*, or one parent if the other does not have custody and control, . . . [State Adoptions or the] licensed adoption agency . . . shall be entitled to the exclusive care and control of the child at all times until a petition for adoption is granted, *except as specified in subdivision (n).* . . ." (§ 366.26, subd. (j), italics added.) Subdivision (n), in turn, authorizes the juvenile court "*at a* [section 366.26] *hearing or anytime thereafter*, [to] designate a *current caretaker*[7] as a prospective adoptive parent" if the caretaker has taken care of the child for at least six months, has expressed a commitment to adoption,

---

[7] Given the limitation to designate only "current caretakers," the juvenile court in this instance had no authority to designate Grandmother or Aunt and P.F.—in addition to Foster Parents—as prospective adoptive parents.

and has taken at least one step to facilitate the adoption process. (§ 366.26, subd. (n)(1), italics added.) The designation gives the caretaker limited standing in the dependency proceeding, essentially requiring the agency to give the caretaker notice of any proposed decision it has made to remove the child from placement with the caretaker, permitting the caretaker to file a petition with the juvenile court objecting to the proposed removal, and permitting removal of the child only if the court determines removal is in the child's best interest. (§ 366.26, subd. (n)(3); see *Wayne F. v. Superior Court* (2006) 145 Cal.App.4th 1331, 1334, 1342 [52 Cal.Rptr.3d 519].)

Finally, we note that section 366.26 generally outlines the procedures by which the juvenile court selects a permanent plan for a dependent child "in order to provide [a] stable, permanent home[]" for that child, choosing, in order of preference, a plan of either adoption, legal guardianship, or long-term foster care. (§ 366.26, subd. (b).) The court may select a plan of adoption only after ordering the termination of parental rights, and, if the petition for adoption is filed with the juvenile court, may proceed with the adoption only after the appellate rights of the natural parents have been exhausted. (§ 366.26, subd. (b)(1); see also § 366.26, subds. (c)(1), (e).)

■ But section 366.26 is *not* the exclusive procedure to terminate parental rights in a dependency proceeding. With regard to a dependent child, the "exclusive procedures for permanently terminating parental rights" are those specified in section 366.26, and *also* those specified in several Family Code sections including section 8700. (§ 366.26, subd. (a).)

C. *The Interplay of Voluntary Relinquishment and Dependency Law*

■ The foregoing provisions, read together, clearly evidence a legislative intent to preserve without limitation the right of a birth parent of a dependent child to relinquish voluntarily his or her parental rights and free the child for adoption through a public adoption agency. (Welf. & Inst. Code, §§ 361, subd. (b), 366.26, subd. (a); Fam. Code, §§ 8700, 8704.) This right includes the ability to participate in the adoption process to the extent of designating a relative or other person with whom the birth parent intends the public adoption agency to place the child for adoption. It also includes the right— notwithstanding the voluntary relinquishment of all other parental rights—to rescind the relinquishment within the specified 30-day period, in the event that the public adoption agency terminates the designated placement before adoption is final. (Fam. Code, § 8700, subds. (f), (g), (h).) These rights necessarily

continue throughout the dependency proceeding, at least until the juvenile court has ordered the involuntary termination of parental rights, an order that obviously leaves the birth parent with no further rights to relinquish.

Here the juvenile court, at its hearing on December 5, 2008, had before it the State Adoptions assessment and attached declarations. The assessment and declarations indicated that the parents had completed a voluntary, designated relinquishment that had been accepted by State Adoptions, a public adoption agency, and that duly became final on December 1, when State Adoptions headquarters gave written acknowledgment of the relinquishment. (See Fam. Code, § 8700, subd. (e)(1)(A).) The court was on notice, as the minor's trial counsel pointed out, that there was no "necessity" for a section 366.26 hearing, at least in its "classical" sense, because the parents had exercised their right under section 361, subdivision (b), to relinquish their parental rights and free the minor for adoption through a public adoption agency.

 Neither the dependency law nor the applicable rules of court specify what the juvenile court must do in such circumstances—that is, when the parents make a voluntary designated relinquishment that becomes final *after* the court has set a section 366.26 hearing, but *before* the date set for the section 366.26 hearing. The scheme outlined above, however, makes it clear what a juvenile court may *not* do. The court is barred by section 361, subdivision (b), from making any order that interferes with a birth parent's final voluntary designated relinquishment.

The orders made by the juvenile court in this case impermissibly interfered with the parents' relinquishment in several respects. First and foremost, the court was no longer authorized to order the involuntary termination of parental rights. The parents had effectively terminated their parental rights through the alternative procedure of voluntary relinquishment, an alternative expressly authorized by section 366.26, subdivision (a). Moreover, an order of involuntary termination, once it becomes final, is conclusive and binding in nature, both on the parents and the minor, and the juvenile court cannot set it aside.[8] (§ 366.26, subd. (i)(1).) As such, it would necessarily interfere with and effectively cut off the parents' one remaining right to *rescind* their relinquishment in the event the designated placement was terminated before adoption became final. (Fam. Code, § 8700, subds. (g), (h).)

Because the court could not properly make an order that involuntarily terminated Father's and Mother's parental rights, it was also precluded from making an order under section 366.26 placing the minor for adoption.

---

[8] There is a limited exception applicable when the plan for adoption has been unsuccessful after at least three years. (§ 366.26, subd. (i)(2).)

(§ 366.26, subd. (b)(1).) The minor had already been placed for adoption through the final designated relinquishment, at which point State Adoptions was entitled to exclusive custody and control of the minor until the granting of an order of adoption. (Fam. Code, § 8704, subd. (a).) The most that the juvenile could properly do, under these circumstances, was to hold a hearing for the purpose of vacating the scheduled section 366.26 hearing, and state on the record its reasons for doing so. That is, the selection of a permanent plan under section 366.26 had become unnecessary because the parents and State Adoptions, through a final voluntary designated relinquishment, had freed the minor for adoption through State Adoptions, a public adoption agency.

■ Finally, it was error for the juvenile court in this instance to issue an order granting the request of the minor's current caregivers, Foster Parents, for designation as prospective adoptive parents. Such an order may *only* be made at a section 366.26 hearing or thereafter. (§ 366.26, subd. (n)(1).) But the court in this instance could not accomplish the purposes of a section 366.26 hearing. It was precluded by the final voluntary designated relinquishment from ordering the involuntary termination of parental rights, and thus from ordering the minor placed for adoption. Nor was the court authorized to select any other permanent plan, as the relinquishment had effectively accomplished such a selection by freeing the minor for adoption through State Adoptions. As we have noted, the only proper course open to the court was to vacate the section 366.26 hearing, and thus it was premature for the court to consider properly any request for designation as prospective adoptive parents under section 366.26, subdivision (n). More importantly, the order designating Foster Parents as prospective adoptive parents was in critical conflict with Father's and Mother's final designation of Aunt and P.F. as the intended adoptive placement, in violation of section 361, subdivision (b) and Family Code section 8700, subdivision (f).

■ The Department argues that the juvenile court was entitled to proceed with the section 366.26 hearing in order to address the protections offered to current caregivers under subdivision (n) of section 366.26, because those provisions are applicable "[n]otwithstanding section 8704 of the Family Code." (See § 366.26, subd. (n)(1).) The simple answer to this is that "exclusive custody and control" provisions of Family Code section 8704 apply when a child has been freed for adoption by *either relinquishment or termination of parental rights.* (Fam. Code, § 8704, subd. (a), italics added.) When this language is read together with section 366.26, subdivision (n)(1), it is clear that the procedures of section 366.26, subdivision (n), are intended to limit the "exclusive custody and control" provisions of Family Code section 8704 only when the child has been freed for adoption through a juvenile

court order terminating parental rights involuntarily in a section 366.26 hearing. The protections for current caregivers under section 366.26, subdivision (n), do not come into play when a child has been freed for adoption through the voluntary relinquishment procedures of Family Code section 8700. Any such interpretation would allow the error that occurred in this case—a designation of current caregivers as prospective adoptive parents that actively conflicts with a voluntary designated relinquishment in violation of the protections afforded to birth parents under section 361, subdivision (b).

██ The Department protests that such an interpretation would allow "different standards" to be applied to a child depending on whether his or her birth parents relinquished their rights or had them terminated involuntarily by the juvenile court. However, the scheme outlined above is designed to balance the best interests of a dependent child with the rights of birth parents. On the one hand, a birth parent is entitled to contest a proposed involuntary termination of his or her parental rights, and when there is an involuntary termination of parental rights, the juvenile court may not proceed with nor finalize any adoption until the parents' appellate rights have been exhausted. (§ 366.26, subds. (e), (j).) On the other hand, when birth parents relinquish their parental rights voluntarily, they are not only able to participate in the adoption process, but their relinquishment also obviates the need for a contested hearing to terminate their rights involuntarily. The child relinquished voluntarily, may, in turn, achieve the stability of a final adoption without the delay attendant upon the exhaustion of the parents' appeal from an involuntary termination of parental rights.[9]

██ The Department's other arguments are similarly unpersuasive. It suggests, for example, that the juvenile court was entitled to proceed with a section 366.26 hearing in order to implement the protections of section 366.26, subdivision (k). That subdivision sets out a "preference" for the application

---

[9] Such delay is illustrated by the period that has elapsed since the order of December 19, 2008, the subject of this appeal. We note also that the provisions of subdivision (n) of section 366.26 originated with Statutes 2005, chapter 626, section 1 (Sen. Bill No. 218 (2005–2006 Reg. Sess.)). To determine legislative intent it is appropriate to consider the floor analysis of this bill. (See *People v. Broussard* (1993) 5 Cal.4th 1067, 1075 [22 Cal.Rptr.2d 278, 856 P.2d 1134].) The Senate floor analysis for Senate Bill No. 218 of 2005 indicates that the procedures to protect current caregivers, now set out in section 366.26, subdivision (n), were designed to address concerns arising during the more *delayed* "period between termination of parental rights and the granting of a petition for adoption," as distinguished from the more expedited period between voluntary relinquishment and the granting of a petition for adoption. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 218 (2005–2006 Reg. Sess.) as amended Sept. 2, 2005, p. 2.)

for adoptive placement made by a current caretaker when the agency making the placement determines that the child "has substantial emotional ties to the . . . caretaker . . . and removal . . . would be seriously detrimental to the child's emotional well-being." (§ 366.26, subd. (k).) That subdivision, however, had little or no relevance by the time of the date set for the section 366.26 hearing. The "preference" refers only to the processing of the application for adoptive placement and the completion of the family study. (§ 366.26, subd. (k).) The Department's report completed immediately prior to the scheduled section 366.26 hearing indicates that the applications for adoptive placement and home studies had already been completed for Foster Parents, as well as for Aunt and P.F.

The Department suggests finally that the juvenile court was entitled to proceed with the section 366.26 hearing because none of the parties clearly disputed the need for the court to select a permanent plan. We disagree. As noted above, the court was on notice that a final voluntary designated relinquishment had been accomplished prior to scheduled commencement of the section 366.26 hearing, and the minor's trial counsel pointed out there was no longer any need to accomplish the "classical" purposes of a section 366.26 hearing.

### D. *Conclusion*

We conclude, in summary, that when, as here, the birth parents make a voluntary designated relinquishment to a public adoption agency under Family Code section 8700, and the relinquishment becomes final after the section 366.26 hearing has been set, but before it is scheduled to commence, the relinquishment effectively precludes the need for a hearing to select a permanent plan under section 366.26. The juvenile court is precluded from making any order that interferes with the parents' unlimited right to make such a voluntary relinquishment to a public adoption agency. In this case, the court made such orders, both when it terminated parental rights involuntarily, and when it designated Foster Parents as prospective adoptive parents under section 366.26, subdivision (n). These orders not only violated the parents' statutory rights under section 361, subdivision (b), but were clearly prejudicial to the designation they made under Family Code section 8700, naming Aunt and P.F. as the intended adoptive placement. We accordingly reverse the order of December 19, 2008.

### II. *ICWA Notice Violations*

At the outset of the proceeding, Mother stated she had a grandmother who was a member of a Cherokee or Choctaw tribe, while Father stated he thought he might have Blackfeet "ancestry." The Department sent notice to

these tribes, including such information about their grandparents and great-grandparents as Mother and Father had provided. Based on the tribes' responses, the Department determined, by the time of the six-month hearing, that ICWA did not apply. At the six-month hearing itself, counsel for Mother stated that Aunt, who was not present, had provided counsel with documents indicating that Aunt was applying for a "certificate of degree of Indian blood" from the Chickasaw tribe—a tribe not previously identified in the proceeding. Grandmother, who was present at the hearing, informed the court that neither her own mother nor her grandmother had an "affiliation with any tribe." The court stated that, since the documents did not establish any specific information indicating Chickasaw ancestry, and since Grandmother denied such ancestry, there was "no credible basis" for the claim, and ruled that the minor was not an Indian child within the meaning of ICWA.

Mother argues, essentially, that the Department failed to investigate adequately the parents' initial claims of Indian ancestry, to provide the Cherokee, Choctaw, and Blackfeet tribes with more detailed information than what she and Father had provided. She also claims the juvenile court violated its ongoing duty to provide notice when it declined to provide notice to the Chickasaw tribe after being informed at the six-month hearing of Aunt's application to that tribe.

 The duty of the Department and juvenile court under ICWA, to inquire regarding Indian affiliation, and to provide notice and an opportunity to intervene to appropriate Indian tribes, is one that applies in dependency proceedings that involve a child the court knows or has reason to know is an Indian child, and that may result in an involuntary foster care placement, guardianship, or involuntary termination of parental rights and adoptive placement. (25 U.S.C. § 1912; Cal. Rules of Court, rule 5.480; see Cal. Rules of Court, rule 5.481.) After the parents' voluntary relinquishment freed the minor for adoption through State Adoptions, the minor was effectively freed from the dependency proceedings to the extent they might result in involuntary foster care placement, guardianship, or adoptive placement following an involuntary termination of parental rights. At that point, State Adoptions, as the adoption agency accepting relinquishment, became subject to separate provisions of ICWA relating to voluntary relinquishments by the parents of an Indian child. (See 25 U.S.C. §§ 1913, 1915; Fam. Code, § 8606.5.) The inquiry and notice provisions no longer applied pending the outcome of the voluntary adoption proceeding. Accordingly, we deem events subsequent to the court's ICWA status ruling, made at the six-month hearing, rendered Mother's objections moot, and deem it unnecessary to consider the merits of those objections.

## Disposition

The order of December 19, 2008, is reversed.[10]

Margulies, J., and Banke, J., concurred.

A petition for a rehearing was denied December 22, 2009.

---

[10] The motion of minor's counsel to strike references to Dr. Blake Carmichael's report from respondent's brief is denied as moot in light of the controlling issues on appeal.