Filed 10/9/20  P. v. Roberts CA2/3
See dissenting opinion

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA DEREK ROBERTS,<br><br>    Defendant and Appellant. | B302244<br><br>(Los Angeles County<br>Super. Ct. No. BA295768) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael E. Pastor, Judge.  Affirmed.

Janyce Keiko Imata Blair, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kristen J. Inberg and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Joshua Derek Roberts petitioned for resentencing under Penal Code[1] section 1170.95.  The trial court summarily denied the petition without appointing counsel for Roberts.  He appeals and contends that he was entitled to have counsel appointed.  We reject this contention.

## BACKGROUND

In 2007, Roberts was tried for and found guilty of the murder of Donte Loeb.  Per the Court of Appeal opinion affirming the judgment of conviction, the evidence was that Loeb was taking out the trash one night.  (*People v. Roberts* (Nov. 18, 2008, B201071) [nonpub. opn.].)  Loeb's mother heard gunshots.  Looking outside, she saw two men, one in the driver's seat of a car and the second standing next to the car.  Loeb was leaning on a flowerbed, holding his side.  He had been shot four times, fatally.  (*Id.* at p. 2.)  Loeb's mother identified Roberts and Derek Daron Cooper as the two men she saw that night.  (*Id.* at pp. 1–2.)  She said Roberts was the car's driver.  Two other witnesses identified Roberts, and one witness said that Roberts and Cooper had guns.  Another witness heard someone say, " 'What's up, Blood?' "  (*Id.* at p. 3.)  Cooper's former girlfriend testified that whenever she, Cooper, and Roberts passed the spot where Loeb had been shot, Cooper and Roberts would say that's " 'where we flat lined that guy.' "  (*Id.* at p. 4.)

The jury found Roberts guilty of first degree murder (§ 187, subd. (a)).  The jury found not true a personal gun use allegation (§ 12022.53, subd. (d)) but found true a principal gun-use allegation (§ 12022.53, subds. (d) & (e)(1)).  The jury also found a

---

[1] All further statutory references are to the Penal Code.

gang allegation true (§ 186.22, subd. (b)(1)(A)).  On July 26, 2007, the trial court sentenced Roberts to 50 years to life.

Thereafter, our Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.), which took effect January 1, 2019.  That law amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, all to the end of ensuring that a person's sentence is commensurate with the person's criminal culpability.  Based on that new law, a person convicted of murder under a felony murder or natural and probable consequences theory may petition the sentencing court for vacation of the conviction and resentencing if certain conditions are met.  (§ 1170.95.)

Roberts petitioned for resentencing under Senate Bill No. 1437.  In his form petition, Roberts checked boxes indicating: (1) a complaint, information or indictment had been filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) he was convicted of first or second degree murder under one of those doctrines, and (3) he could not now be convicted of first or second degree murder because of changes to sections 188 and 189.  Roberts also checked boxes to indicate he was not the actual killer and had been convicted of second degree murder under the natural and probable consequences or the felony-murder doctrines.  He did not ask the court to appoint counsel for him during the resentencing process.

The trial court summarily denied the petition without appointing counsel for Roberts.  In denying the petition, the trial court said it had relied on *People v. Roberts*, *supra*, B201071, the court file containing minutes of the proceedings, jury instructions, and verdict forms.  Those documents showed that

3

the case was not prosecuted under either the felony murder or natural probable consequences doctrines and that the jury was not instructed on either of those theories. Instead, Roberts was convicted as a principal, under CALJIC Nos. 3.00 and 3.01, so the jury necessarily found that he harbored the requisite specific intent to kill either as a direct perpetrator or aider and abettor.

## DISCUSSION

Roberts contends the trial court violated his state and federal constitutional rights by summarily denying his petition without appointing counsel for him.[2] As we now explain, our principal task in interpreting a statute is to determine legislative intent and to give effect to the law's purpose. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, fn. 8 (*Verdugo*), review granted Mar. 18, 2020, S260493.) Our task leads us to conclude that the trial court properly summarily denied the petition.

Under Senate Bill No. 1437, malice may no longer be imputed to a person based solely on the person's participation in the crime; now, the person must have acted with malice aforethought to be convicted of murder. (§ 188; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749, review granted Nov. 26, 2019, S258234.) To that end, the natural and probable consequences doctrine no longer applies to murder. And, a participant in

---

[2] This issue is currently on review in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598. Specifically, the Supreme Court is considering whether superior courts may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95 and when the right to appointed counsel arises under subdivision (c) of that section.

enumerated crimes is liable under the felony-murder doctrine only if the participant was the actual killer; or with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e); see *Munoz*, at pp. 749–750.)

Senate Bill No. 1437 also added section 1170.95. "Pursuant to subdivision (a) only individuals who meet three conditions are eligible for relief: (1) the person must have been charged with murder 'under a theory of felony murder or murder under the natural and probable consequences doctrine,' (2) convicted of first or second degree murder, and (3) can no longer be convicted of first or second degree murder 'because of changes to Section 188 or 189 made effective January 1, 2019.' " (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

Section 1170.95 provides for multiple reviews of a petition by the trial court. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897–898, review granted Aug. 12, 2020, S263219; *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 974; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57–58, review granted Mar. 18, 2020, S260410; *Verdugo*, *supra*, 44 Cal.App.5th at p. 328; but see *People v. Cooper* (2020) 54 Cal.App.5th 106.) Subdivision (b) of section 1170.95 describes an initial review to determine the facial sufficiency of the petition. (*Verdugo*, at p. 328.) To be facially sufficient, the petition must contain the petitioner's declaration that the petitioner is eligible for relief according to the criteria in subdivision (a), the case number and year of conviction, and whether the petitioner is requesting appointment of counsel. (§ 1170.95, subd. (b)(1).) If the petition is missing any of this information "and cannot be readily ascertained by the court, the

5

court may deny the petition without prejudice." (§ 1170.95, subd. (b)(2).) This initial review amounts essentially to a ministerial review to ensure that the right boxes are checked.

Subdivision (c) of section 1170.95 then describes the next two levels of review. It provides, "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

The first sentence in subdivision (c) refers to a prebriefing, initial prima facie review to preliminarily determine a petitioner's statutory eligibility for relief as a matter of law. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329.) In this step of review, the trial court determines, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief. (*Id.* at pp. 329–330.) The court may review the complaint, the information or indictment, the verdict form or the documentation for a negotiated plea, and the abstract of judgment. (*Ibid.*) A Court of Appeal opinion is part of the appellant's record of conviction (*id.* at p. 333), as are jury instructions (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review granted Sept. 23, 2020, S263939). If these documents reveal ineligibility for relief, the trial court can dismiss the petition. (*Verdugo*, at p. 330.)

6

If the record of conviction does not establish as a matter of law the petitioner's ineligibility for resentencing, evaluation of the petition proceeds to the second prima facie review, in which "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330.) The trial court must accept as true the petitioner's factual allegations and make a preliminary assessment regarding whether the petitioner would be entitled to relief if the factual allegations were proved. (*Id.* at p. 328.)

We agree with those Courts of Appeal that interpret section 1170.95 to permit a trial court to make an initial determination whether the petitioner may be entitled to relief without first appointing counsel. The structure and grammar of subdivision (c) of that section "indicate the Legislature intended to create a chronological sequence: first, a prima facie showing; *thereafter*, appointment of counsel for petitioner; then, briefing by the parties." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 332, italics added; accord, *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1140.) As *Verdugo* at pages 328 to 329 noted, to hold otherwise that counsel must be appointed once a petitioner files a facially sufficient petition renders subdivision (c) redundant to subdivision (b)(2).

And, where a cursory review of the record of conviction shows that the petitioner is not entitled to relief under Senate Bill No. 1437, it " 'would be a gross misuse of judicial resources to require the issuance of an order to show cause or even

appointment of counsel based solely on the allegations of the petition, which frequently are erroneous.' " (*People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1138.)

Here, Roberts's contention that the trial court violated his constitutional rights by failing to appoint counsel for him fails for two reasons. First, Roberts did not ask for counsel.

Second, even if the trial court nonetheless should have ignored Roberts's wishes, it properly denied the petition summarily without appointing counsel. The record of conviction establishes that Roberts was not convicted of murder under either a felony murder or natural and probable consequences theory. The information alleged one sole count of murder against Roberts. And the jury was not instructed on felony murder or on the natural and probable consequences doctrine. Rather, the jury was instructed on aider and abettor liability under CALJIC Nos. 3.00 and 3.01. This instructional scenario accords with the background. That is, Roberts and his accomplice, both armed, approached the victim, and one or both shot him. After, Roberts and his accomplice commented that they had shot the victim. Roberts was therefore convicted as a direct aider and abettor who acted with intent to kill. As such, Senate Bill No. 1437 does not apply to him. "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1135.)

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


                                        DHANIDINA, J.


I concur:


        EDMON, P. J.

LAVIN, J., Dissenting:

Defendant Joshua Roberts filed a facially sufficient petition that alleged entitlement to relief under Penal Code section 1170.95 (Section 1170.95). After reviewing the court file, however, the trial judge summarily denied the petition without input from Roberts. For the reasons set forth in my dissent in *People v. Tarkington* (2020) 49 Cal.App.5th 892, 917, review granted August 12, 2020, S263219, this was error. (See also *People v. Cooper* (2020) 54 Cal.App.5th 106, 112 [trial court must give the parties an opportunity to submit briefing before denying a facially sufficient petition].)

Section 1170.95 also does not permit the trial court to undertake an investigation if the petition is complete and alleges eligibility under the statute. Indeed, "[b]y undertaking a collateral investigation, the [trial] judge abdicates his or her responsibility for deciding the parties' dispute on the pleadings and evidence properly brought before the court." (*Guadalupe A. v. Superior Court* (1991) 234 Cal.App.3d 100, 109, citing *Wenger v. Commission on Judicial Performance* (1981) 29 Cal.3d 615, 632, disapproved on other grounds in *Doan v. Commission on Judicial Performance* (1995) 11 Cal.4th 294.) This is a matter of due process. (See *Conservatorship of Schaeffer* (2002) 98 Cal.App.4th 159, 164 [the court's action amounted to an ex parte proceeding or private investigation]; see also *People v. Ayala* (2000) 24 Cal.4th 243, 262 ["As a general matter, ex parte proceedings are disfavored."].) And even if the trial court could take judicial notice of matters not tendered by the parties, it failed to comply with the process prescribed by the Evidence Code. (See *People v. Banda* (2018) 26 Cal.App.5th 349, 360.)

Nor should this court have taken judicial notice of the truth of the facts found and recited in the prior appellate opinion and the underlying record in that appeal. (See *Epstein v. Superior Court* (2011) 193 Cal.App.4th 1405, 1409, fn. 1 ["to the extent that the statutory procedure contemplates a trial of disputed facts, it is 'singularly inappropriate for appellate courts, which are not equipped to try issues of fact' "]; see also *Kilroy v. State of California* (2004) 119 Cal.App.4th 140, 150 [it is permissible to judicially notice the fact that a judge ruled to suppress evidence, but improper to take judicial notice of judge's findings supporting the order].)

I would reverse the order and remand for further proceedings.


LAVIN, J.

2