Filed 4/3/25  In re S.R. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re S.R. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LYNETTE P.,<br><br>Defendant and Appellant. | G064485<br><br>(Super. Ct. Nos. 24DP0410, 24DP0411, 24DP0412)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Julie Anne Swain, Judge. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez and Chloe R. Maksoudian, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*          \*          \*

This juvenile dependency appeal essentially concerns an evidentiary issue. Lynette P. (the mother) and Sean R. (the father), have three children together (the children): S.R., age 6 (the daughter), C.R., age 5 (the oldest son), and D.R., age 2. The mother and father (collectively, the parents) were involved in a custody dispute in family court (the family court case) when Orange County Social Services Agency (SSA) initiated this dependency case. In the family court case, the family court had ordered a psychologist to prepare a custody report under Evidence Code section 730 (the section 730 report). In this case, the mother petitioned the juvenile court to request and obtain the section 730 report from the family court. The juvenile court denied the mother's request and also denied her motion for reconsideration of the issue (the reconsideration motion). On appeal, the mother argues the juvenile court's denial of the reconsideration motion was an abuse of discretion. We disagree and affirm the ruling.

FACTS AND PROCEDURAL HISTORY

I.

THE FAMILY COURT CASE

The parents met in 2013. They never married but moved in together during the mother's first pregnancy and separated in 2021. The father initiated the family court case in November 2022, by filing a parentage petition seeking custody of the children. The next month, the family court temporarily awarded the mother and father joint legal and physical custody, which granted the father at least 72 hours of parenting time per week. Under this temporary order, the children primarily lived with the mother and saw the father Tuesday and Thursday from 4:30 p.m. to 8:00 a.m. the following day and Saturday from 9:00 a.m. to Sunday at 9:00 a.m.

In January 2023, the family court ordered psychologist Dr. Thea Reinhart to prepare the section 730 report and provide recommendations regarding the permanent custody of the children.[1] The report was to contain interviews with the parents, the children, and collateral contacts.

Beginning in November 2023, the mother made multiple reports that the father was sexually abusing the daughter. These reports were determined to be inconclusive and/or unsubstantiated. Among other things, the daughter made no independent disclosures of sexual abuse to SSA or law enforcement (including during a Child Abuse Services Team (CAST) interview) and there was no medical evidence of sexual abuse. However, Dr. Reinhart did report to SSA that the daughter "told her that the father repeatedly touched her vaginal area . . . and stated that [her vagina] was hurting." The father told police that the mother was fabricating these allegations to gain full custody of the children, to punish him for leaving her, and to get increased child support.

## II.

### SSA'S INVOLVEMENT

This dependency case arose from a CAST interview with the oldest son on March 7, 2024, concerning the father's alleged sexual abuse of the daughter. During this interview, the oldest son stated that the mother sometimes struck him on the face with an open hand. We note that SSA had

_____

[1] "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." (Evid. Code, § 730.)

received several referrals concerning the children prior to this incident, but they had been determined to be unsubstantiated or inconclusive.

SSA filed a noncustody petition for the children on March 22, 2024 (the petition). Among other things, the petition alleged that (1) the children were at risk of serious harm due to conflict between the parents and, in particular, the contentious family court case; (2) there were multiple but unsubstantiated allegations that the father was sexually abusing the daughter; and (3) the mother and father potentially had unresolved mental health issues.[2]

A hearing on the petition was held on March 27, 2024. Both parents denied the petition's allegations. The court was unable to finish the hearing on March 27, so it was trailed until April 2, 2024. In the meantime, the court ordered the children to be detained but released to their parents under certain protective orders.

SSA issued a report prior to the resumption of the detention hearing on April 2. The report noted that a social worker had spoken with Dr. Reinhart on March 21 and 29. Dr. Reinhart reported that she had "been working with the family for about a year and a half." She stated the mother did most of the parenting and "is a smart [woman], loves the children and is not inadequate." She also reported that the father was participating in therapy but "it took a lot of work" to get him to do so. Dr. Reinhart further explained that the father was "initially . . . negative about the mother and wanted the evaluation to show the mother was inadequate." She also stated

---

[2] The petition initially alleged that the mother used improper physical discipline with the oldest son, but this allegation was later struck from the petition.

that there were "questionable times with [the father] because he [was] often late in returning the children and [initially] demonstrated no interest in therapy because he thinks 'he's the evolved parent.'" Still, Dr. Reinhart expressed no current concerns about either the mother or father. She believed "that a fair 50/50 custody arrange[ment] should be advocated for because 'the children need both parents.'"[3]

A social worker interviewed a detective familiar with the sexual abuse allegations against the father. The detective believed the mother had been coaching the daughter to report the abuse. For example, during the CAST interview, the detective had asked the daughter, "'what do you like to do with dad?' [She] answered, 'my dad likes to touch my vagina.' [The detective] expressed, 'it seemed like she knew that's what we were there to talk about.'" He further noted her use of "'the word vagina'" indicated that an adult was telling her what to say. Finally, the detective "shared concerns the mother [was] reading [the daughter] books of victims of sexual abuse when there [was] no evidence of the child been sexually abused even after multiple CAST interviews and sexual assault examinations."

A social worker also contacted a pediatrician who had examined the daughter for signs of sexual abuse in January 2024. The pediatrician "stated there was no definitive evidence of sexual abuse to [the daughter] and no need for a follow up exam." He also expressed that his notes reflected that "[the daughter] did not disclose anything."

After the detention hearing resumed on April 2, 2024, the juvenile court found the petition stated a prima facie case and the children

---

[3] SSA had previously contacted Dr. Reinhart in November 2023 and February 2024, apparently concerning prior referrals.

were subject to Welfare and Institutions Code section 300.[4] The court released the children to the parents under the protective orders issued on March 27, and it scheduled a jurisdiction hearing.

## III.

## SSA's REPORTS

SSA prepared several reports prior to the jurisdiction hearing.

Generally, the children's basic needs such as food, clothes, and safety were met by both parents. However, the daughter reported the parents "'never get along.'" SSA also noted evidence that the mother was coaching the children. For example, during an interview, the daughter told a social worker that "'mom said [the father] lied but it's not true.'" Likewise, during the oldest son's interview, SSA asked if he knew the difference between a truth and a lie. The oldest son promised to "tell the truth and then said, 'Daddy lie.'"

The mother continued to allege that the father was sexually abusing the daughter, but the daughter denied any abuse to SSA. The mother stated the children had been in her care full time from November 2023 to January 2024. She believed that since the children had begun spending more time with the father, the daughter had become more emotionally unstable, gained weight, and developed a poor attitude. She also claimed the father verbally demeaned her in front of the children.

The father told SSA that the mother had kept the children away from him for months before the family court issued the temporary custody order in December 2022. He denied the sexual abuse allegations and believed the mother was coaching the daughter. For example, he claimed the daughter

---

[4] All further undesignated statutory references are to the Welfare and Institutions Code.

6

had once told him, "'mommy says you touch my privates.'" The father also claimed that when he refused to marry the mother, she became hostile and began making false accusations against him.

SSA spoke with Dr. Reinhart again on April 28, 2024. Dr. Reinhart characterized the parents' relationship as "conflictual" and "dysfunctional." She believed the father lacked structure while the mother was overly structured. When asked about the mother's alleged "fixation on sexual abuse," Dr. Reinhart "denied knowing why [the mother] behaved this way and did not think [the mother] was coaching the [daughter]." But Dr. Reinhart agreed that the mother "overly exposed the children specifically [the daughter] to multiple CAST interviews and forensic exams," which was detrimental to them. Dr. Reinhart was unable to provide any specific recommendations because the section 730 report was still incomplete. She also "reported that the current 730 evaluation ha[d] been suspended due to [SSA's] involvement." However, Dr. Reinhart believed the children loved their parents and thought both parents should be in the children's lives.

IV.

MOTHER'S REQUEST FOR THE SECTION 730 REPORT

On May 23, 2024, the mother filed a request in the family court case asking the family court to release the section 730 report to the juvenile court and the parties to the dependency case. The family court set a hearing for this request for July 12, 2024.

In this case, a jurisdiction hearing was held on May 30, 2024. At the hearing, both SSA and the mother requested a continuation. SSA asked for a continuance to June 12, 2024, so it could finish its investigation. The mother requested the hearing be continued until after July 12, to allow the family court time to rule on her request to release the section 730 report. She

7

argued the section 730 report was relevant to the jurisdiction hearing because it was conducted over 14 months and contained "interviews with the parents, the children, and collateral contacts, as well as a recommendation by [Dr. Reinhart] regarding custody, services, and the welfare of these children." The juvenile court continued the jurisdiction hearing to June 12, 2024, denying the mother's request that it be set after July 12.

Due to the juvenile court's ruling, the jurisdiction hearing would occur before the family court could rule on the mother's request to release the section 730 report. As such, the mother petitioned the juvenile court to request the section 730 report directly from the family court under section 204, so the juvenile court could obtain it prior to the jurisdiction hearing. In the alternative, the mother asked the juvenile court to order SSA to obtain the section 730 report from the family court under section 204.[5]

After a hearing on June 4, 2024, the juvenile court denied the mother's petition concerning the section 730 report. As to her first request, the juvenile court agreed that section 204 permitted it to obtain a copy of the section 730 report from the family court. But, it explained, section 204 did not allow the juvenile court to release the section 730 report to any of the parties in the dependency case. Rather, "the release would have to either come from the agency that requested it and had it or the court that has jurisdiction over the document," i.e., the family court. In other words, "no records . . . may be

---

[5] Section 204 provides that "a family law court . . . shall, upon request from the juvenile court in any county, provide to the court all available information the court deems necessary to make a determination regarding the best interest of a child . . . who is the subject of a proceeding before the juvenile court . . . . The information shall also be released to a child protective services worker or juvenile probation officer acting within the scope of his or her duties in that proceeding." (§ 204.)

disclosed to any party in the case unless the party requests the agency or a court that originates the record [(i.e., the family court)] to release these records and the request is granted." The court then explained that it did not "find it to be helpful for the Court to get [the section 730 report] and other counsel not to be able to have it."

The juvenile court also rejected the mother's request to order SSA to obtain the section 730 report from the family court under section 204. It explained that it "generally allow[s] the lawyers to choose what evidence to seek, how they choose to seek it, and what evidence to present, and then it's up to the Court to decide whether that evidence is admissible or relevant."

V.

THE JURISDICTION HEARING AND THE RECONSIDERATION MOTION

The jurisdiction hearing was later continued to July 1, 2024, and combined with the disposition hearing. At the combined hearing, the juvenile court found the petition to be true by a preponderance of the evidence and the children to be subject to the court's jurisdiction under section 300, subdivision (b)(1). It vested custody of the children with the parents under SSA's supervision. The court scheduled a review hearing to address custody and visitation for July 30, 2024, and set a six-month review hearing in December 2024.

A few weeks later, on July 16, 2024, the mother filed the reconsideration motion, asking the juvenile court to reconsider her petition to request the section 730 report directly from the family court or order SSA to obtain it. The reconsideration motion explained that the family court had denied the mother's request to release the section 730 report under a protective order. The family court had ruled that only the juvenile court or SSA could make such a request.

9

At the July 30 custody hearing in this case, the juvenile court denied the reconsideration motion. It explained, "we've heard [jurisdiction], we've heard [disposition], we're set for six-month review, and the Court understands that those evaluations [for the section 730 report] were conducted under the purview of family law court with a different focus than this court requires." The court ordered a new section 730 evaluation to be prepared for purposes of the dependency case. It explained that "[i]t's important that the Court have current updated information in relation to the orders that the Court has made regarding disposition in this case and what is happening going forward."[6]

On appeal, the mother argues the juvenile court's denial of the reconsideration motion was an abuse of discretion.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

Both parties contend the juvenile court's decision not to request the section 730 report directly from the family court, or order SSA to obtain it, is reviewed for an abuse of discretion. While they have not cited any direct authority on this point, we agree. Section 204 requires a family court to provide "all available information the [juvenile] court *deems necessary to make a determination* regarding the best interest of" the child in dependency proceedings. (§ 204, italics added.) Put differently, the statute allows the juvenile court to determine, in its discretion, what information is necessary from the family court to evaluate a child's best interest. Here, the juvenile

---

[6] At the July 30 custody hearing, the juvenile court also ordered "SSA to make [a] visitation schedule as close to 50/50 as possible."

10

court determined the section 730 report was unneeded. This determination was akin to a discretionary evidentiary ruling, which is reviewed for an abuse of discretion.[7] (*Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1188.)

"A trial court abuses its discretion if its ruling exceeds ""the bounds of reason, all of the circumstances before it being considered.""" (*Jones v. Solgen Construction, LLC*, *supra*, 99 Cal.App.5th at p. 1188.) "'The abuse-of-discretion standard requires us to uphold a ruling which a reasonable judge might have made, even though we would not have ruled the same and a contrary ruling would also be sustainable. We cannot substitute our own judgment.'" (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 428.)

II.

ANALYSIS

Essentially, the juvenile court did not request the section 730 report because it found the report had little probative value. The mother asserts it was in the children's best interests for the court to grant the reconsideration motion and obtain it. She claims the 730 report contained valuable information that would have informed the juvenile court's custody decisions. However, as we explain below, it was not unreasonable for the

---

[7] There is scant case law interpreting section 204. None of the parties have addressed whether this statute was the proper vehicle for the mother's request. Nor have they addressed whether the juvenile court correctly interpreted the statute. Since these issues were not briefed, we will not address them and presume the court correctly applied section 204. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [trial court's order is presumed correct on appeal.)

juvenile court to conclude that the section 730 report offered little probative value given the state of the proceedings.

"The best interest of the child is the fundamental goal of the juvenile dependency system . . . ." (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.) "When ruling in dependency proceedings, the welfare of the minor is the paramount concern of the court. . . . [T]he child's future is as vitally affected as is that of the parties competing for his or her custody." (*Guadalupe A. v. Superior Court* (1991) 234 Cal.App.3d 100, 106.) As such, "the court should avail itself of all evidence which might bear on the child's best interest." (*Ibid.*) "Concern for the minor's welfare necessarily requires the court to consider all the information available." (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1048.)

However, the above case law does not mean that a juvenile court must always allow or request evidence from a family court case that might have some relevance to the dependency proceeding. Such a rule would waste time and render "juvenile court judges . . . powerless to exclude cumulative evidence or time-consuming evidence of marginal probative value." (See *In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1844.) Rather, juvenile courts are tasked with "control[ling] all proceedings during the hearings *with a view to the expeditious and effective ascertainment* of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought." (§ 350, subd. (a)(1), italics added.)

Here, the juvenile court could reasonably conclude the section 730 report was cumulative. SSA's reports included five interviews with Dr. Reinhart. Interviews concerning prior SSA referrals were conducted on November 6, 2023, and February 1, 2024. And in this case, SSA interviewed

12

Dr. Reinhart on March 21 and 29, and April 28, 2024. Thus, Dr. Reinhart's observations concerning the parents and the children were already reflected in SSA's reports.

Further, there is little evidence the section 730 report would have added new information that was not already in SSA's reports. Nothing in the record shows Dr. Reinhart had any further contact with the parents or the children after her interview with SSA on April 28, 2024. Indeed, Dr. Reinhart told SSA on April 28 that the section 730 report was incomplete and "ha[d] been suspended due to Social Services involvement." Neither party has cited any evidence showing Dr. Reinhart ever resumed the section 730 report or that it was ever completed.

The juvenile court also found the section 730 report had "a different focus than this court requires." The mother does not contest this finding, so we must accept it. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) Given the different focus of the juvenile and family court proceedings, the juvenile court could reasonably decide the section 730 report was not sufficiently relevant to the dependency case and order a new report to be prepared.

For the above reasons, it was not irrational for the juvenile court to conclude the section 730 report had little probative value. Thus, it did not abuse its discretion by refusing to request the section 730 report directly from the family court or by refusing to order SSA to obtain it. (See *Harman v. City and County of San Francisco, supra,* 158 Cal.App.4th at p. 428.)

Finally, we note that the mother's opening brief states that she is also appealing the juvenile court's dispositional rulings from July 1, 2024. Her briefs do not identify any errors in these rulings. They only address the reconsideration motion. As such, we find the mother has waived any

13

argument that the court erred in its dispositional rulings from July 1, 2024. (*Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at p. 956.)

## DISPOSITION

The juvenile court's order denying the reconsideration motion is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


DELANEY, J.


SCOTT, J.